J-E02006-25          2026 PA Super 8

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
MARVIN GUS JENNINGS :
:
Appellant : No. 1128 EDA 2024

Appeal from the Judgment of Sentence Entered February 1, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002750-2019

BEFORE: LAZARUS, P.J., PANELLA, P.J.E., OLSON, J., STABILE, J.,
KUNSELMAN, J., MURRAY, J., KING, J., SULLIVAN, J., and LANE, J.

OPINION BY MURRAY, J.:                    **FILED JANUARY 14, 2026**

Marvin Gus Jennings (Appellant) appeals from the judgment of sentence imposed following his jury convictions of one count each of attempted statutory sexual assault, attempted corruption of minors, unlawful contact with a minor, and criminal use of a communication facility (CUCF).[1] This Court certified the instant appeal for *en banc* review principally to address Appellant's claim that a trial court, at sentencing, may not impose a probationary term concurrently with a term of incarceration,[2] which is the

---

[1] 18 Pa.C.S.A. §§ 901(a), 3122.1(b), 6301(a)(1)(ii), 6318(a)(1), 7512(a). Unless otherwise noted, all citations to the Crimes Code and Sentencing Code refer to the statutory versions in effect on the offense dates of Appellant's instant convictions.

[2] The instant appeal was listed consecutively with the *en banc* appeal at docket number 907 EDA 2024, **Commonwealth v. Robinson**, as both cases
*(Footnote Continued Next Page)*

position espoused by several recent panel decisions.[3] We hold, to the contrary, that the language of 42 Pa.C.S.A. § 9721(a) (sentencing generally) clearly and unambiguously permits trial courts to impose concurrent terms of probation and total confinement. We likewise deem meritless Appellant's remaining sentencing claims, and affirm the judgment of sentence.

A panel of this Court, and the trial court, thoroughly detailed the facts underlying Appellant's convictions. *See Commonwealth v. Jennings*, 296

_____

implicate the legality of trial courts imposing concurrent terms of probation and incarceration. By order dated September 26, 2025, we consolidated "for purposes of **oral argument only**[,]" *Jennings* and *Robinson*. Order, 9/26/25 (emphasis in original).

[3] *See Commonwealth v. Garcia*, 332 A.3d 1244 (Pa. Super. filed Dec. 19, 2024) (unpublished memorandum at 7-8) (for purposes of determining whether the defendant was still serving a sentence for Post Conviction Relief Act (42 Pa.C.S.A. §§ 9541-9546) relief eligibility, concluding that the defendant serving a split sentence of probation and incarceration could not begin serving his probationary term until he completed his concurrent terms of incarceration imposed in unrelated cases); *Commonwealth v. Bowers*, 331 A.3d 655 (Pa. Super. filed Nov. 26, 2024) (unpublished memorandum at 7) (*sua sponte* vacating, as illegal, the defendant's concurrent terms of probation and incarceration); *Commonwealth v. Patel*, 324 A.3d 1239 (Pa. Super. filed July 17, 2024) (unpublished memorandum at 11) (same); *Commonwealth v. Qawiee*, 321 A.3d 923 (Pa. Super. filed May 3, 2024) (unpublished memorandum at 16-17) (same).

Conversely, several panels have affirmed judgments of sentence imposing concurrent terms of probation and incarceration without *sua sponte* vacating the sentences as illegal. *See*, *e.g.*, *Commonwealth v. Lenhardt*, 2025 WL 3090147 (Pa. Super. filed Nov. 4, 2025) (unpublished memorandum); *Commonwealth v. Jefferson*, 2025 WL 3046179 (Pa. Super. filed Oct. 31, 2025) (unpublished memorandum); *Commonwealth v. Sawyer*, 2025 WL 2926461 (Pa. Super. filed Oct. 15, 2025) (unpublished memorandum).

A.3d 583, 222 EDA 2022 (Pa. Super. 2023) (unpublished memorandum at 1-4); Trial Court Opinion, 10/4/24, Appendix B at 1-5. In brief, between April 14 and 20, 2019, Appellant engaged in sexually explicit conversations, through a dating/social media application, with an individual (Casey) purporting to be a 14-year-old girl. *See*, *e.g.*, Exhibit 3 (text messages) at 28 (Appellant text messaging Casey, "If u send a topless picture, I'll know u cool and we can hook up"). Casey, however, was a fictitious online profile maintained by Ridley Township Police Detective Timothy Kearney.

Appellant arranged to meet Casey in a K-Mart parking lot on April 20, 2019, where law enforcement arrested Appellant. In a recorded interview, Appellant advised police, *inter alia*, that he suspected Casey was older than she had indicated to him, based on photographs in her online dating profile. *See* Trial Court Opinion, 5/24/22, at 4 (the trial court describing Appellant's recorded interview with law enforcement, admitted at trial as Exhibit 7, explaining that "Appellant essentially informed [police] that he was curious; maybe it was a young girl, maybe it was an adult, or maybe it would be a cop, but that [Appellant] freely came to the parking lot that day knowing it could be 14-year-old Casey.").

Police charged Appellant with the above offenses, alleging in the criminal complaint that Appellant had prior convictions of rape and involuntary deviate

sexual intercourse (IDSI)[4] (collectively, predicate convictions), subjecting him to mandatory sentencing provisions pursuant to 42 Pa.C.S.A. § 9718.2(a)(1) (discussed *infra*, and providing, in part, that an offender previously convicted of certain sexual offenses shall "be sentenced to a minimum sentence of at least 25 years of total confinement[.]"). *See* Criminal Complaint, 4/20/19, at 3. The Commonwealth subsequently filed a criminal information charging Appellant with the above offenses, which contained no reference to Appellant's predicate convictions and Section 9718.2's mandatory penalty provisions. Information, 6/5/19, at 1-2.

Following procedure irrelevant to our disposition, the matter proceeded to a jury trial on July 21, 2021. On July 23, 2021, the jury convicted Appellant of all charges. The trial court ordered a presentence investigation report (PSI), and directed the Pennsylvania Sexual Offenders Assessment Board (SOAB) to assess whether Appellant satisfied the criteria for sexually violent

---

[4] *See* 18 Pa.C.S.A. §§ 3121, 3123. As detailed below, although Appellant pled guilty in 1989, the offense date of the predicate convictions was November 3, 1988.

predator (SVP)[5] designation (SOAB assessment) under the Sexual Offender Registration and Notification Act (SORNA).[6]

The SOAB evaluator completed Appellant's SVP assessment on October 8, 2021. Therein, the SOAB evaluator opined that Appellant did not meet the criteria to be classified as an SVP. SOAB Assessment, 10/8/21, at 8. According to the SOAB evaluator, although Appellant's behaviors satisfied the statutory criteria to be "deemed predatory[,]" Appellant "does not suffer from a mental abnormality/personality disorder as defined in [42 Pa.C.S.A. § 9799.12]." *Id.* at 7-8.

The matter proceeded to sentencing on October 27, 2021 (the first sentencing hearing), where the Commonwealth sought imposition of Section 9718.2's mandatory penalties. The trial court heard argument from counsel concerning what sentence it should impose.[7]

_____

[5] **See** 42 Pa.C.S.A. §§ 9799.12 (defining SVP and various terms), 9799.24 (setting forth criteria that shall be considered by the SOAB in assessing whether an offender should be classified as an SVP). Significantly, Section 9799.12 defines "predatory" as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization." *Id.* § 9799.12.

[6] 42 Pa.C.S.A. §§ 9799.10-9799.42.

[7] Prior to sentencing, both Appellant and the Commonwealth submitted sentencing memoranda to the trial court, which were not included in the certified record on appeal.

Appellant (1) emphasized the SOAB evaluator's opinion that Appellant did not satisfy the statutory criteria for SVP designation; (2) detailed Appellant's work and family history; and (3) argued that the Commonwealth did not provide notice of the applicability of Section 9718.2's mandatory penalties, and, therefore, the trial court should impose a guideline-range sentence under the Sentencing Code. N.T., 10/27/21, at 5-7.

The Commonwealth responded that Appellant received adequate notice of the applicability of Section 9718.2. *Id.* at 8 (the prosecutor stating that both he and the trial court advised Appellant "about the 25-year mandatory minimum multiple times."). The Commonwealth further read into the record (over Appellant's objection) the victim impact statement (VIS) of K.S., the victim of Appellant's predicate convictions. *Id.* at 9-12; *see also id.* at 10 (Appellant objecting "based upon the fact that [the VIS was] based on the events that occurred in 1989 [*sic*].").

At the conclusion of the hearing, the trial court imposed consecutive 25- to 50-year terms of incarceration for Appellant's convictions of attempted statutory sexual assault and unlawful contact with a minor, and further imposed a **concurrent** seven years' probation for CUCF, resulting in an aggregate sentence of 50 to 100 years in prison.[8] In crafting its sentence, the

---

[8] The trial court determined that Appellant's attempted corruption of minors conviction merged with his attempted statutory sexual assault conviction for sentencing purposes. N.T., 10/27/21, at 18.

trial court explained that it had listened to the trial testimony, reviewed the PSI, and considered the nature and significance of Appellant's prior convictions. *Id.* at 17, 19-21. The trial court further characterized Appellant as "a predator, notwithstanding" the SOAB assessment. *Id.* at 20; *see id* at 4 (the trial court criticizing the SOAB assessment as based upon "insufficient information").[9] The trial court acknowledged that it was imposing a *de facto* life sentence, but explained that it did not deem Appellant "amenable to treatment." *Id.* at 22. Based upon its review, the trial court concluded that a *de facto* life sentence was necessary to ensure society's protection from Appellant. *Id.*

Appellant timely filed a post-sentence motion, which the trial court denied after a hearing. Appellant timely appealed, challenging, *inter alia*, 1) the sufficiency of the evidence supporting his convictions; 2) the legality of his sentence pursuant to Section 9718.2; and 3) the discretionary aspects of his sentence.

A panel of this Court rejected Appellant's sufficiency claims, but determined Appellant's challenge to the legality of his sentence merited relief. *Jennings*, 296 A.3d 583 (unpublished memorandum at 13, 15); *see also id.*

_____

[9] The trial court additionally notified Appellant that he would be subject to Tier III (lifetime) registration requirements under Subchapter H of SORNA. N.T., 10/27/21, at 21; Addendum to Guilty Plea Statement (Notification at Sentencing), 10/27/21, 1-5.

(unpublished memorandum at 19) (deeming Appellant's discretionary aspects of sentencing claim moot in light of his meritorious legality issue).

We explained that, "[a]lthough there is no dispute that [Appellant] was aware of his prior convictions and the Commonwealth's intention to seek a mandatory minimum sentence," the Commonwealth's failure to supply Appellant with a copy of his predicate convictions rendered the "sentencing procedure [] insufficient for purposes of Section 9718.2(c)." **Id.** (unpublished memorandum at 17); **see also** 42 Pa.C.S.A. § 9718.2(c) ("The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of the previous convictions of the offender, copies of which **shall** be furnished to the offender." (emphasis added)). Accordingly, we vacated Appellant's judgment of sentence and remanded for a resentencing hearing. **Id.**

Appellant petitioned for allowance of appeal, which our Supreme Court denied. **Commonwealth v. Jennings**, 303 A.3d 1057 (Pa. 2023).

Following remand, on February 1, 2024, the matter proceeded to resentencing (the second sentencing hearing). The trial court[10] admitted into

_____

[10] The Honorable John P. Capuzzi, Sr., presided over all proceedings relevant to the instant appeal, including both the first and second sentencing hearings. At the beginning of the second sentencing hearing, the trial court indicated, "We're here by order of the Superior Court for a resentence based on the Commonwealth's failure to present" to Appellant a copy of the predicate convictions. N.T., 2/1/24, at 3. **But see id.** at 9 (the trial court agreeing with Appellant that, at the second sentencing hearing, the trial court was required

*(Footnote Continued Next Page)*

evidence (without objection) Exhibit C-1, *i.e.*, certified copies of each of Appellant's 1989 convictions at OTN: M 37221-0 (including Appellant's predicate convictions), copies of the criminal complaints, and a court summary sheet.[11] N.T., 2/1/24, at 4; **see also id.** (the prosecutor stating that she was handing Appellant a copy of Exhibit C-1). The trial court then entertained the parties' sentencing arguments.

The Commonwealth requested that the trial court reimpose an aggregate sentence of 50 to 100 years in prison. N.T., 2/1/24, at 4, 6. The Commonwealth maintained that Appellant is "an absolute danger to society."

_____

to reconsider whether to impose Appellant's mandatory minimum sentences consecutively or concurrently, as "the defense does have the opportunity to make argument … about … resentencing").

[11] Exhibit C-1 contains certified copies of Appellant's convictions of one count each of rape, IDSI, and robbery (18 Pa.C.S.A. § 3701) as to K.S.; and one count each of robbery as to two additional victims, M.F. and D.L. **See** Exhibit C-1 (certified convictions). The court documents disclose that Appellant committed these crimes on November 3 and 4, 1988, and that the Commonwealth *nolle prossed* numerous additional charges. **Id.**

Although it does not indicate the aggregate sentence imposed, the attached court summary sheet reflects that Appellant received the following prison terms: rape of K.S. – five to ten years; robbery of K.S. – one to two years; IDSI of K.S. – three to ten years; robbery of M.F. – one to two years; and robbery of D.L. – one to two years. **Id.** (court summary); **see also** N.T., 2/1/24, at 9 (the prosecutor stating, "I believe [Appellant] served approximately either 21 or 22 years in custody for [his 1989 convictions]."); Trial Court Opinion, 5/24/22, at 6 (indicating that Appellant served 21 years in prison for his 1989 convictions).

*Id.* at 9.   In support of its argument, the Commonwealth summarized the factual allegations underlying Appellant's 1988 charges as follows:

> [O]n November 3, [] 1988, [Appellant] went inside of a bathroom -- a ladies' room at Einstein Hospital.  [Appellant] threatened to break the neck of [K.S.],[12] then had sexual intercourse with her without her consent.  [Appellant] also demanded money from [K.S.] with respect to that incident.  [Appellant] was convicted of that.  Also on November 3, while inside of … the Metropolitan Hospital, again, inside of a bathroom, [Appellant] choked yet another victim, [D.L.], to the ground, dragged her into a stall, and demanded her money.  [Appellant] did take her purse, and then attempted to tie [D.L.] up.  When that didn't work, [Appellant] stuffed a wad of paper into her mouth before fleeing.   On November 4, [] 1988, [Appellant] did attempt to have forcible sexual intercourse with a third victim, [M.F.].  … [Appellant] was inside … the ladies' room at the Independent Center.  [Appellant] grabbed [M.F. and] threatened to kill her if she did not do … as she was told.  [Appellant p]ulled [M.F.] into a bathroom stall.  … [Appellant t]ook money from [M.F.] and then removed her clothing while choking her.   Then she began to fight, and [Appellant] fled.  Those are the offenses [Appellant] was convicted of.

*Id.* at 7-9 (footnote added; paragraph breaks omitted; punctuation modified).

Appellant objected, arguing the allegations the Commonwealth recited "were not proven at trial[, a]nd we don't have the guilty plea transcript from those guilty pleas where he did plead guilty to particular charges." *Id.* at 8. Appellant explained that he had "no problem admitting the [criminal] complaints[,]" but emphasized that "[h]e did not plead guilty to every charge in these matters." *Id.*

---

[12] The Commonwealth did not reference the specific victims in its argument. We glean the factual scenarios related to each victim from our review of Exhibit C-1.

The trial court responded:

I understand that. I'm very familiar with the entire case. I read the file. My sentencing adequately covered all those offenses. And I read them, I looked at them. And the fact that some were *nolle prosequi* because he took -- or was found guilty on one doesn't mean those facts didn't exist.

*Id.*

Appellant then presented his sentencing argument, advocating for an aggregate sentence of 25 to 50 years in prison. *Id.* at 10, 13. Appellant detailed his age, education, military service, prior drug addiction, employment history, and amenability to rehabilitation. *Id.* at 10-13; *see also id.* at 14 (exercising his right to allocution, Appellant expressing his "honest contrition"; stating, "I should have just stopped. And I didn't, I just kept going. I just wanted to see … what was going to happen[,] regardless [of] whether it could get me in trouble or not."). Appellant additionally directed the trial court to his sentencing memorandum, to which he attached a letter (Exhibit A) requesting leniency, collectively authored by numerous members of Appellant's family. *Id.* at 13; *see also* Sentencing Memorandum, 1/29/24, Exhibit A (describing the significant abuse Appellant suffered in childhood, and Appellant's importance to his family). *But see id.* at 7 (indicating that Appellant "grew up in a traditional family" and had a "good upbringing").

At the conclusion of the hearing, the trial court reimposed Appellant's original sentence. The trial court explained its rationale as follows:

Well, [Appellant], I'm not changing your sentence. I looked back and, as I said at the time, there were three other [prior victims],

and I'm not sure that anything that you've said would change anything. Because, here, [] you thought [Casey] was a young girl, 14 years of age. I sat through the trial. I listened to the testimony. I saw the text messages. … [R]ehabilitation is one factor. Protection [of] society is another factor that's very, very, very important. And the history -- now I don't care if there was a lapse in time, the history shows me that you're a sexual predator. And so I'm going to sentence you like I did before.

N.T., 2/1/24, at 14-15 (punctuation modified); *see also id.* at 16-17 (Appellant objecting to the trial court's imposition of a *de facto* life sentence, and the trial court responding that "the sentence is appropriate given [Appellant's] past conduct and given what he did in this instance.").

Appellant timely filed a post-sentence motion, which the trial court denied without a hearing. Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925. Following the parties' submission of appellate briefs, we certified the case for *en banc* review.[13]

Appellant raises the following three issues:

I) Whether the overall sentence is illegal because the [trial] court lacked authority to order probation for [CUCF] … to be served concurrently with incarceration?

II) Whether the mandatory twenty-five to fifty-year confinement sentences pursuant to 42 Pa.[]C.S.[A.] § 9718.2 … are illegal[,] since the prosecution failed to charge that provision or specify any facts triggering enlarged punishment in the information?

III) Whether the [trial] court erred as a matter of law, abused its discretion, and imposed a manifestly excessive and unreasonable *de facto* life sentence, where it imprisoned [Appellant] for a total

_____

[13] Both the Commonwealth and Appellant subsequently filed substitute briefs for our *en banc* review.

of fifty to 100 years[,] in violation of the Sentencing Code and fundamental norms?

Appellant's Brief at 6 (issues reordered).[14]

Appellant's first two issues challenge the legality of his sentence. "The determination as to whether a trial court imposed an illegal sentence is a question of law[ for which] … our standard of review is *de novo*, and our scope of review is plenary." **Commonwealth v. Davis**, 341 A.3d 808, 811 (Pa. Super. 2025) (citations omitted). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction." **Commonwealth v. Verma**, 334 A.3d 941, 951 (Pa. Super. 2025) (citation omitted).

In his first issue, Appellant argues the trial court "lacked authority to order probation for [CUCF] concurrent with confinement." Appellant's Brief at 36. Appellant maintains that the Sentencing Code "does not contemplate incarceration as an element of probationary sentences." **Id.** (citing **Commonwealth v. Basinger**, 982 A.2d 121, 123 (Pa. Super. 2009) (holding a flat term of incarceration may not be a condition of probation)); **see also** Appellant's Reply Brief at 5 (relying on **Basinger** and arguing that "[j]ust as

_____

[14] The Commonwealth argues that Appellant is precluded from challenging "a procedural defect under [Section] 9718.2" "because the current challenge … was not part of the limited issue addressed on remand …." Commonwealth Brief at 24. However, as Appellant's second claim, like his first, implicates the legality of the sentence imposed on remand, it is properly before us. **See Commonwealth v. Barnes**, 151 A.3d 121, 124 (Pa. 2016) ("[A] challenge to the legality of sentence cannot be waived." (citation omitted)).

imprisonment cannot be a component of probation, the opposite is also true."). According to Appellant, "probation is a distinct penalty that may only be utilized when prison is unnecessary[,] or as a 'tail' to aid reintegration." *Id.* at 37 (citing *Basinger*, 982 A.2d at 127, and *Commonwealth v. Allshouse*, 33 A.3d 31, 36 (Pa. Super. 2011), *overruled on other grounds by Commonwealth v. Simmons*, 262 A.3d 512 (Pa. Super. 2021) (*en banc*)).

In support of his argument, Appellant relies on our unpublished memorandum in *Qawiee*,[15] wherein a panel of this Court *sua sponte* vacated the defendant's judgment of sentence because the trial court imposed concurrent periods of incarceration and probation. *Qawiee*, 321 A.3d 923 (unpublished memorandum at 16-17); *see also Commonwealth v. Watson*, 228 A.3d 928, 941 (Pa. Super. 2023) (stating that an appellate court may raise issues involving the legality of a sentence *sua sponte*). In *Qawiee*, the Court acknowledged that, under the Sentencing Code, "orders of probation and total imprisonment, among other sentencing alternatives, may be imposed 'consecutively or concurrently.'" *Id.* (unpublished memorandum at 16) (quoting 42 Pa.C.S.A. § 9721(a)). Nevertheless, citing *Basinger*, *Allshouse*, and *Commonwealth v. Brown*, 145 A.3d 184 (Pa. Super. 2016), the *Qawiee* Court concluded the sentencing court lacked authority to impose

_____

[15] Unpublished memoranda filed after May 1, 2019, may be cited for their persuasive value. Pa.R.A.P. 126(b)(2).

concurrent terms of probation and incarceration. ***Qawiee***, 321 A.3d 923 (unpublished memorandum at 16-17).

Appellant further suggests that the imposition of concurrent terms of probation and incarceration leads to absurd results. Appellant's Reply Brief at 7-8 (citing 1 Pa.C.S.A. § 1922(1) ("In ascertaining the intention of the General Assembly in the enactment of a statute[,]" we presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."). According to Appellant, "[i]f an inmate is not entitled to credit against probation while confined, the [sentencing] court may not order concurrent probation." ***Id.*** at 8 (citing ***Brown***, 145 A.3d at 188, for the proposition that "state probation cannot commence until release from federal custody"). Appellant further argues that "expecting an inmate's compliance with probation is unreasonable, if not impossible." ***Id.*** at 7.

The Commonwealth counters that, by its plain language, Section 9721(a) "expressly permits a sentencing court to select and impose an order of probation and total confinement either concurrently or consecutively." Commonwealth Brief at 28. The Commonwealth argues that—apart from ***Qawiee***—all the cases Appellant relies upon in support of his first issue are distinguishable. ***Id.*** at 31. The Commonwealth further argues that ***Qawiee*** extended ***Allshouse***, ***Basinger***, and ***Brown*** "beyond the narrow holdings those cases actually established." ***Id.*** at 37; ***see also id.*** at 31-37 (analyzing preceding cases).

The Sentencing Code provides the following alternatives available to a court imposing sentence, and the manner in which those sentences may be imposed:

> **(a) General rule.--**In determining the sentence to be imposed the court shall, except as provided in subsection (a.1), consider and select one or more of the following alternatives, and **may impose them consecutively or concurrently**:
>
> > (1) **An order of probation**.
> >
> > (2) A determination of guilt without further penalty.
> >
> > (3) Partial confinement.
> >
> > (4) **Total confinement**.
> >
> > (5) A fine.

42 Pa.C.S.A. § 9721(a)(1)-(5) (emphasis added); *see also Commonwealth v. Goodco Mech., Inc.*, 291 A.3d 378, 410 (Pa. Super. 2023) ("Under [Section] 9721, the court has discretion to impose sentences consecutively or concurrently[.]" (quoting *Commonwealth v. Moury*, 992 A.2d 162, 171 (Pa. Super. 2010)).

"The **unambiguous language** of [18 Pa.C.S.A. §] 1321(a)[ (renumbered as the identical Section 9721(a))] empowers a sentencing court to fashion a sentence which includes one or more of five alternative punishments, **and permits these punishments to be imposed consecutively or concurrently**." *Commonwealth v. Pierce*, 441 A.2d 1218, 1219 (Pa. 1982) (citation and footnote omitted; emphasis added); *see also Commonwealth v. Levine*, 531 A.2d 513, 514 (Pa. Super. 1987) ("The

predecessor to Section 9721 was found [by the **Pierce** Court] to be a clear and unambiguous enactment. The language utilized by the legislature in the predecessor remains unchanged in the current statute." (citation omitted)).

In determining the appropriateness of a probationary sentence, Section 9722 prescribes that sentencing courts consider enumerated, mitigative grounds, including the catchall, "[s]uch other grounds as indicate the desirability of probation." 42 Pa.C.S.A. § 9722(12). Section 9754(b) directs sentencing courts to "attach reasonable conditions authorized by [S]ection 9763 (relating to conditions of probation) as it deems necessary to ensure or assist the defendant **in leading a law-abiding life**."[16]  **Id.** § 9754(b) (emphasis added); **see also Commonwealth v. Foster**, 214 A.3d 1240, 1250 (Pa. 2019) ("The law provides a general condition of probation – that the defendant lead a 'law-abiding life,' *i.e.*, that the defendant refrain from committing another crime." (citing 42 Pa.C.S.A. § 9754(b))).

"Probation itself is a form of lenity in the context of criminal sentencing[.]" **Commonwealth v. Hall**, 80 A.3d 1204, 1216 (Pa. 2013).

---

[16] Section 9763(b) was amended effective June 11, 2024, omitting the language, "as it deems necessary to ensure or assist the defendant in leading a law-abiding life." 42 Pa.C.S.A. § 9763(b). However, we note that although the applicable, pre-amendment version of Section 9763 does not contain the following language, the current version of Section 9763 provides that "the court shall attach only those [probation] conditions that the court deems necessary and the least restrictive means available to promote the defendant's rehabilitation **and protection of the public** ...." 42 Pa.C.S.A. § 9763(b) (emphasis added).

Significantly, in imposing conditions of probation[17] consistent with Section 9754, our Supreme Court has observed that "such conditions must be reasonable and devised to serve rehabilitative goals, such as recognition of wrongdoing, **deterrence of future criminal conduct, and encouragement of future law-abiding conduct**." *Id.* at 1215 (citations omitted; emphasis added); *see also Commonwealth v. Glawinski*, 310 A.3d 321, 326 (Pa. Super. 2024) ("A probation order is unique and individualized. It is constructed as an alternative to imprisonment and is designed to rehabilitate a criminal defendant while still preserving the rights of law-abiding citizens to be secure in their persons and property." (citation omitted)).

Mindful of the foregoing legal principles, we turn to the decisional authority forming the basis of Appellant's argument that concurrent terms of probation and incarceration are illegal.

As noted above, this Court in *Basinger* concluded that incarceration may not be a condition or element of probation. *Basinger*, 982 A.2d at 123. For his DUI conviction, the trial court sentenced Basinger to two years' probation "on the condition Basinger serve ninety days in the county jail." *Id.* at 124.

---

[17] Appellant has not challenged on appeal the trial court's discretion in imposing any particular conditions of probation.

On appeal, the **Basinger** Court determined that the trial court imposed an unlawful flat sentence, which could not be remedied by its imposition as a condition of probation:

No section of the Sentencing Code contemplates imprisonment as an element of a probationary sentence; probation is in fact a less restrictive alternative to imprisonment directed at rehabilitating the defendant without recourse to confinement during the probationary period. **Commonwealth v. Crosby**, 568 A.2d 233, 235 (Pa. Super. 1990) (quoting **Commonwealth v. Quinlan**, 412 A.2d 494, 496 (Pa. 1980)) ("Parole and probation are established variations on the imprisonment of convicted criminals and are primarily concerned with the rehabilitation and restoration to a useful life of the parolee or probationer."). Thus, probation may be employed in conjunction with confinement as a "tail" designed to assist the defendant in reintegrating with society following a term of imprisonment, or may be imposed where mitigating factors make prison unnecessary. **See** 42 Pa.C.S.A. § 9722 (recognizing mitigating factors that "shall be accorded weight in favor of an order of probation"). **See also Crosby**, 568 A.2d at 235 (quoting **Commonwealth v. Walton**, 397 A.2d 1179, 1184 (Pa. 1979)) ("[C]onditions of probation, though significant restrictions on the offender's freedom, are primarily aimed at effecting, as a constructive alternative to imprisonment, his rehabilitation and reintegration into society as a law-abiding citizen."). Under no circumstances is a sentence of probation a vehicle for imposing "total confinement" outside the restrictions imposed upon it by [42 Pa.C.S.A. §] 9756[(b)(1) ("The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.")].

**Basinger**, 982 A.2d at 127 (citations modified).

Pertinently, the **Basinger** Court acknowledged that Section 9721(a) "allows multiple sentencing options that trial courts may apply either singly or in combination[,]" and stated that "a trial court may impose any of the stated sentencing alternatives subject to limitations on the form in which the resulting judgment of sentence is rendered." **Id.** at 126-27. The **Basinger**

Court explained that Section 9756's prohibition on flat sentences represented one such limitation, especially when made a **component** of probation, which is its own discrete sentencing alternative. *Id.* at 127.

In **Allshouse**, we considered, as a matter of first impression, whether a defendant "constructively" serves probation while serving a term of incarceration as aggregated by the Department of Corrections (DOC). **Allshouse**, 33 A.3d at 36. For crimes committed in Clearfield County, Pennsylvania, a trial court sentenced Allshouse to one to two years in prison, followed by a consecutive term of two years' probation. *Id.* at 33. Several months later, in an unrelated case, a Jefferson County, Pennsylvania, court sentenced Allshouse to one to three years in prison, to be served consecutively to the Clearfield County sentence. *Id.* The DOC aggregated Allshouse's sentence to two to five years' incarceration, of which he served the maximum term. *Id.* While incarcerated, Allshouse accumulated three institutional violations. *Id.*

At the end of Allshouse's prison term, probation agents detained Allshouse for violating his Clearfield County probation, due to his institutional violations and his refusal to sign the terms and conditions of his probation. *Id.* Allshouse argued that his Clearfield County probation "was 'constructively served' at the conclusion of the Clearfield County [prison] sentence[,] while [Allshouse] remained incarcerated on the Jefferson County sentence." *Id.* Following a probation violation hearing, the Clearfield County court rejected

Allshouse's argument, revoked his probation, and resentenced him to ten months to three years in prison. *Id.* at 34. The trial court concluded that the DOC properly aggregated Allshouse's prison terms, and that the Clearfield County probationary term commenced after Allshouse had completed his prison sentence. *Id.*

On appeal, the **Allshouse** Court rejected Allshouse's argument that the trial court's intent was for the probationary tail to commence immediately following his **Clearfield County** prison term. *Id.* at 35. Based on the sentencing order, the **Allshouse** Court concluded that the Clearfield County court's intent was for Allshouse to serve a one- to two-year prison term, and that he be under the Pennsylvania State Board of Probation and Parole's supervision for an additional two years. *Id.*; *see also id.* at 36 ("The intervening Jefferson County case is immaterial.").

Finding "no support in the Pennsylvania statutes that the General Assembly intended to permit defendants to serve a term of probation and a term of state incarceration simultaneously[,]" the **Allshouse** Court instead looked to 18 U.S.C.A. § 3564 for guidance.[18] *Id.* at 36. Section 3564 provides, in relevant part, that "[a] term of probation does not run while the

_____

[18] The **Allshouse** Court noted that "state courts may look to federal court decisions for guidance in interpreting state law[,]" but offered no explanation for its reliance on 18 U.S.C.A. § 3564 when considering the effect of the intervening Jefferson County prison sentence on Allshouse's probationary term. **Allshouse**, 33 A.3d at 36 n.3. The **Allshouse** Court did not address Section 9721(a).

defendant is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than thirty consecutive days." 18 U.S.C.A. § 3564(b). The **Allshouse** Court found Allshouse's "constructive probation" argument incompatible with the federal statute, and determined that "[t]o do as [Allshouse] requests would run contrary to the various policy considerations underlying sentencing." **Allshouse**, 33 A.3d at 36.

Five years later, the **Brown** Court analyzed the novel issue of whether a defendant's state term of probation can run while serving a term of federal imprisonment. **Brown**, 145 A.3d at 186. In April 2007, a Philadelphia trial court sentenced Brown to 11½ to 23 months in prison, followed by a consecutive four years' probation, for a theft offense. **Id.** at 185. The trial court paroled Brown after his sentencing hearing, as Brown had served his minimum sentence. **Id.** The next day, law enforcement took Brown into custody on federal fraud and theft charges. **Id.** Brown pled guilty to several federal offenses and was sentenced to a term of imprisonment, from which he was released on September 26, 2013. **Id.**

In March 2015, Brown pled guilty to a retail theft offense committed in April 2014. **Id.** The trial court that had imposed Brown's 2007 sentence subsequently held a probation violation hearing. **Id.** The court "found that Brown's state probation did not begin until his release from federal custody on September 26, 2013, and, thus, his conviction for retail theft was a direct

violation of that probation." *Id.* Accordingly, the trial court revoked Brown's probation and resentenced him to 48 months' probation. *Id.*

On appeal, Brown argued that his time in federal custody should count towards his state probationary term. *Id.* at 186. So credited, Brown maintained that his probation commenced in December 2008—at the conclusion of his 11½- to 23-month term of incarceration. *Id.* Brown claimed that his probation therefore ended in December 2012, well before the offense date of his retail theft conviction. *Id.*

Rejecting Brown's argument, the **Brown** Court reiterated **Basinger**'s observation that the Sentencing Code "does not contemplate incarceration as a condition of probation." *Id.* at 187. The **Brown** Court explained that, though factually distinguishable, it found **Allshouse**'s reasoning persuasive:

> [P]robation rehabilitates a defendant in a less restrictive manner than total confinement. **Basinger**, 982 A.2d at 127. As such, logic would lead to the conclusion that a term of probation cannot be served while the defendant is imprisoned on an unrelated sentence, whether it be in a state facility as in **Allshouse** or in federal custody as with Brown.

*Id.* at 188; *see also id.* at 187-88 ("The [**Allshouse**] Court found that there is 'no support in the Pennsylvania statutes that the General Assembly intended to permit defendants to serve a term of probation and a term of state incarceration simultaneously.'" (quoting **Allshouse**, 33 A.3d at 36)); *id.* at 187 (citing, without substantive elaboration, **Allshouse**'s reliance on 18 U.S.C.A. § 3564(b)). Like **Allshouse**, **Brown** did not address the applicability of Section 9721(a).

Although not discussed by Appellant, our *en banc* decision in **Simmons** is relevant and instructive. **Simmons** overruled forty years of panel decisions (including the portion of **Allshouse** affirming the prospective revocation of Allshouse's probation) by holding that trial courts may not anticipatorily revoke probation. **Simmons**, 262 A.3d at 523.

In **Simmons**, the trial court sentenced Simmons to a term of imprisonment followed by a consecutive period of probation. **Id.** at 522. Simmons was subsequently convicted of new criminal charges while on parole, before his probation had begun. **Id.** The trial court thereafter revoked Simmons's parole, anticipatorily revoked his probation, and resentenced him to a prison term. **Id.** at 515.

The **Simmons** Court observed that "an order of probation is, obviously, not a sentence of total confinement." **Id.** at 524 (quotation marks and citation omitted); **see also id.** ("[T]he basic objective of probation is to provide a means to achieve rehabilitation without resorting to incarceration[.]") (quoting **Commonwealth v. Kates**, 305 A.2d 701, 708 (Pa. 1973)). Pertinently, however, the **Simmons** Court gleaned from "the plain language of" Section 9721(a), the following principle: "[W]hen sentencing a defendant, the trial court is authorized to enter an 'order of probation' and the court may impose this order of probation 'consecutively or concurrently.'" **Id.** at 518-19 (citing 42 Pa.C.S.A. § 9721(a)).

The **Simmons** Court concluded that,

under our statutes, no part of the trial court's order of probation could have commenced during [Simmons's] term of imprisonment or parole. Certainly, Section 9721(a) declares that a trial court may enter an "order of probation" at sentencing and may impose this "order of probation" "consecutively or concurrently." 42 Pa.C.S.A. § 9721(a). **Under the plain language of Section 9721(a), when the trial court imposed [Simmons's] order of probation consecutively, the entirety of [Simmons's] order of probation was imposed consecutively**.

*Simmons*, 262 A.3d at 524 (emphasis added). *But see id.* at 523-24 (explaining that "conditions of probation" may only attach to an "order of probation"; noting that "[n]othing in the Sentencing Code permits a trial court to attach conditions of probation to a term of total confinement." (citing 42 Pa.C.S.A. § 9756 (total confinement), and *Commonwealth v. Thier*, 663 A.2d 225, 229 (Pa. Super. 1995) (concluding that the trial court could not impose a condition of probation where no probationary sentence had been imposed))).

Our Supreme Court subsequently approved of the *Simmons* Court's conclusion that the Sentencing Code does not authorize the prospective revocation of probation. *Commonwealth v. Rosario*, 294 A.3d 338, 341 (Pa. 2023). The *Rosario* Court determined the language of 42 Pa.C.S.A. § 9771 (modification or revocation of order of probation) was clear and unambiguous, and forbade anticipatory revocation. *Id.* at 349; *see also id.* at 346 ("Only when the words of a statute are not explicit will we resort to other considerations to discern legislative intent." (citation omitted)).

- 25 -

Nonetheless, assuming *arguendo* that Section 9771 contained any ambiguity, the **Rosario** Court construed Section 9721(a) *in pari materia* with Section 9771. **Id.**; **see also id.** ("Statutes or parts of statutes are *in pari materia* when they relate to the same persons or things or to the same class of persons or things." (quoting 1 Pa.C.S.A. § 1932(a)), **id.** (observing that *in pari materia* construction of statutes "cannot be invoked where the language of a statute is clear and unambiguous." (citation omitted)).

The **Rosario** Court explained that

[S]ection 9721(a) authorizes the court to impose a sentence of probation "consecutively **or** concurrently[.]" 42 Pa.C.S.[A.] § 9721(a) (emphasis added). The word "or" is disjunctive and "means one or the other of two or more alternatives." **In re Paulmier**, 937 A.2d 364, 373 (Pa. 2007). Accordingly, [S]ection 9721(a) permits a probation sentence that is **either** consecutive **or** concurrent to one or more other sentences, not consecutive **and** concurrent. Yet when, as here, the court anticipatorily revokes a consecutive probationary term for a violation of a separate sentence the defendant is currently serving, the probation sentence is effectively both concurrent **and** consecutive, in contravention of the plain language of [S]ection 9721(a).

**Id.** at 349-50 (some citations modified; bold emphasis in original; underline emphasis added).

Having identified the tension between **Basinger**, **Allshouse**, **Brown**, and Section 9721(a), we next "engage in the familiar task of statutory interpretation" to resolve their conflict. **Commonwealth v. Phillips**, 344 A.3d 360, 366 (Pa. 2025). "An issue of statutory interpretation presents a

question of law for which our standard of review is *de novo* and our scope of review is plenary." *Id.* (citation and footnote omitted).

Mindful of our role in determining the legality of statutes, we recognize that "the legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes." *Commonwealth v. Fuentes*, 272 A.3d 511, 520 (Pa. Super. 2022) (quoting *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1283 (Pa. 2014)).

Our Supreme Court recently reiterated the following relevant principles of statutory interpretation:

> "As in all matters of statutory interpretation, the Statutory Construction Act of 1972 (… 'the Act'), 1 Pa.C.S.A §§ 1501-1991, guides our analysis." *Commonwealth v. Coleman*, 285 A.3d 599, 605 (Pa. 2022). The Act instructs that the legislature's intent is paramount, as the "object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." 1 Pa.C.S.A. § 1921(a). "Generally, such intent is best expressed through the plain language of the statute." *Commonwealth v. Stotelmyer*, 110 A.3d 146, 149 (Pa. 2015) (citation and internal quotation marks omitted). *See also* 1 Pa.C.S.A. § 1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").
>
> "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b). Stated differently, "**if the statute's plain language is unambiguous, we must apply it without employing familiar canons of construction and without considering legislative intent**." *Dubose v. Quinlan*, 173 A.3d 634, 643 (Pa. 2017) (footnote omitted). "Only where the words of a statute are ambiguous will we resort to other considerations to discern legislative intent." *Commonwealth v. Kingston*, 143 A.3d 917, 922 (Pa. 2016) (citing, *inter alia*, 1 Pa.C.S.A. § 1921(c)). *See also* 1 Pa.C.S.A. § 1928(b)(1) (providing that penal statutes must be strictly construed).

*Phillips*, 344 A.3d at 367 (brackets omitted; citations modified; emphasis added); *see also Herd Chiropractic Clinic, P.C. v. State Farm Mut. Auto. Ins. Co.*, 64 A.3d 1058, 1067 (Pa. 2013) ("[I]n the absence of a demonstrated constitutional infirmity, courts generally must apply plain terms of statutes as written[.]").

We have further observed that, as the General Assembly's intent is generally best determined from the plain language of a statute,

> it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include. Consequently, as a matter of statutory interpretation, although one is admonished to listen attentively to what a statute says; one must also listen attentively to what it does not say.

*Commonwealth v. Bartic*, 303 A.3d 124, 131 (Pa. Super. 2023) (quoting *Commonwealth v. Wright*, 14 A.3d 798, 814 (Pa. 2011)); *see also Commonwealth v. Sanchez-Frometa*, 256 A.3d 440, 447 (Pa. Super. 2021) ("It is impermissible to interpret a statute by adding words and phrases in a manner that affects its scope and operation."). Given these well-established principles of statutory interpretation, if the language of Section 9721(a) is clear and unambiguous, we may not ignore it or strain to find an alternative meaning by adding unstated exclusions.

Here, Appellant challenges neither the constitutionality of Section 9721(a), nor its language as unclear, inexplicit, or ambiguous. Instead, Appellant appeals to the legislature's purported intent in enumerating probation as a sentencing alternative, noting that the "Sentencing Code does

not contemplate incarceration as an element of probationary sentences." Appellant's Brief at 36 (citing **Basinger**, 982 A.2d at 126-27); **see also** Appellant's Reply Brief at 5 (arguing that total confinement is "incompatible" with probation, as a "less restrictive" sentencing alternative, when "probation is ordered as a component of incarceration." (citations omitted)).

Upon review, like **Pierce** forty years before us, we find Section 9721(a)'s language plain and unambiguous, and its import clear. **See Pierce**, 441 A.2d at 1219. Section 9721(a) identifies permissible sentencing alternatives that the trial court "shall" "consider and select," including "probation" and "total confinement." 42 Pa.C.S.A. § 9721(a)(1), (4). As observed by **Rosario** and **Simmons**, Section 9721(a) indicates that a trial court "may" impose a probationary sentence "consecutively or concurrently" with "one or more of the" delineated sentencing alternatives. 42 Pa.C.S.A. § 9721(a); **see also Lorino v. Workers' Comp. Appeal Bd.**, 266 A.3d 487, 493 (Pa. 2021) (observing that, "when the legislature uses the terms 'shall' and 'may' in the same section of a statute, it is a clear indication that the legislature intends certain actions to be mandatory, and others discretionary."). Indeed, by emphasizing the trial courts imposed probationary terms **consecutive** to the defendants' terms of incarceration, **Rosario** and **Simmons** implicitly acknowledged the trial courts' authority to impose probationary terms to run **concurrently** with carceral terms. **Rosario**, 294 A.3d at 350; **Simmons**, 262 A.3d at 518-19. Therefore, by its

plain language, Section 9721(a) permits trial courts to impose concurrent terms of probation and total confinement. As Section 9721(a)'s terms are "clear and free from all ambiguity," we may not disregard them "under the pretext of pursuing" the statute's spirit. 1 Pa.C.S.A. § 1921(b).

Accordingly, Appellant's claim that his sentence is illegal, because it includes concurrent terms of probation and total confinement, lacks merit and entitles him to no relief. To the extent that **Basinger**, **Allshouse**, and **Brown** suggest that the Sentencing Code provides no authority for imposing probation concurrently with a term of total confinement, we disapprove of their rationales in view of the plain language of Section 9721(a). We further overrule the recent decisions concluding that terms of probation and incarceration cannot run concurrently, including **Garcia**, 332 A.3d 1244, **Bowers**, 331 A.3d 655, **Patel**, 324 A.3d 1239, and **Qawiee**, 321 A.3d 923.

In accordance with our rules of statutory construction, Appellant's argument concerning the purported intent of the General Assembly fails in view of the plain and unambiguous language of Section 9721(a). **See Commonwealth v. Mock**, 219 A.3d 1155, 1164 (Pa. 2019) ("[T]he plain language of a statute cannot be ignored in pursuit of the statute's alleged contrary spirit or purpose." (quotation marks and citation omitted)); 1 Pa.C.S.A. § 1921(b).

However, even if we were permitted to consider Appellant's policy arguments, we would conclude our interpretation plainly serves probation's

dual purposes of rehabilitation **and** deterrence of crime, *i.e.*, the protection of the public.  As our Supreme Court has observed,

> the effectiveness of probation as a rehabilitative tool and as a deterrent to antisocial conduct is the lens through which a violation is to be viewed.  Revocation and resentencing are warranted if, in the face of a new criminal act or the violation of a condition of probation, the court finds that probation is no longer achieving its desired aims of rehabilitation and deterring criminal activity.

**Foster**, 214 A.3d at 1251; **see also Hall**, 80 A.3d at 1216 (stating that conditions of probation "must be reasonable and devised to serve rehabilitative goals, such as … deterrence of future criminal conduct").

Where a trial court imposes a probationary sentence concurrently with an underlapping carceral sentence, it retains sentencing options unavailable in a parole revocation context.  **Compare Commonwealth v. Kalichak**, 943 A.2d 285, 290 (Pa. Super. 2008) ("[T]he only option for a court that decides to revoke parole is to recommit the defendant to serve the already-imposed, original sentence." (citation omitted)), **with** 42 Pa.C.S.A. § 9771(b) ("[U]pon revocation [of probation,] the sentencing alternatives available to the court shall be the same as were available at the time of initial sentencing[.]").  Moreover, where the possibility of revocation looms, a probationary term imposed concurrently with incarceration serves to deter inmates from engaging in further criminal conduct.

Undoubtedly, the primary goal of probation is the rehabilitation of offenders.  **See Simmons**, 262 A.3d at 524.  However, part of probation's

rehabilitative aim is the deterrence of future criminal conduct and the protection of society. *See Hall*, 80 A.3d at 1215. The goals of probation are not so narrow as to render sentences of total confinement and probation mutually exclusive, such that concurrent imposition of these sentencing alternatives utterly thwarts the purpose of probation. Further, as orders of probation must be "unique and individualized," *Glawinski*, 310 A.3d at 326, and require trial courts to craft terms of probation to suit the circumstances of the offender, we reject Appellant's bald claim that "expecting an inmate's compliance with probation is unreasonable, if not impossible." Appellant's Reply Brief at 7. Consequently, in addition to Section 9721(a) clearly and unambiguously permitting the imposition of concurrent terms of probation and incarceration, we find Appellant's policy arguments unpersuasive. Appellant's first issue merits no relief.

In his second issue, Appellant contends that his mandatory sentences are illegal "because the prosecution did not charge any mandatory sentencing provisions or allege any facts necessary to trigger enlarged punishment in the bill of information." Appellant's Brief at 26; *see also id.* at 27 ("The accused may not be sentenced for a particular charge if the government fails to include notice of that offense in the information." (citations omitted)). Citing *Commonwealth v. Moses*, 271 A.2d 339 (Pa. 1970), *Commonwealth v. Campbell*, 417 A.2d 712 (Pa. Super. 1980), and *Commonwealth v. Longo*, 410 A.2d 368 (Pa. Super. 1979), all of which held that the fact of a prior

conviction triggering enhanced penalties must be pled in the indictment, Appellant argues that "courts may not hand down enlarged recidivist penalties if the indictment or information contains no allegations of prior convictions." *Id.* at 27-28.

> According to Appellant,
>
> the prosecution must reference in the bill of information the mandatory sentencing provision and its triggering facts. Proper compliance with this procedure is necessary to implicate the sentencing court's authority to actually impose that enlarged penalty later. Section 9718.2 refers only to "notice" in general terms, but it does not (implicitly or explicitly) refer to the indictment or information. This omission makes sense since the legislature presumably recognized the dubious footing on which it would find itself if it passed a law undermining the information's constitutional function.
>
> In the event of a conviction, the prosecution must **also** comply with Section 9718.2(c) (proof at sentencing) if it opts to invoke the statute – by providing the accused with "reasonable notice of its intention to proceed under this section." 42 Pa.C.S.A. § 9718.2(c). With the benefit of having absorbed all the evidence throughout the course of the trial, prosecutors can wield their discretion in an informed way. If the prosecution is reassured that a mandatory sentence is appropriate, it can supply the requisite statutory notice at that time and proceed accordingly. **See id.** § 9718.2(a)(1), (b).

*Id.* at 30-31 (brackets and some citations omitted; emphasis in original; citations modified).

The Commonwealth responds that **Commonwealth v. Aponte**, 855 A.2d 800 (Pa. 2004), controls, and defeats Appellant's instant claim:

> Here, the statutes under which [A]ppellant was convicted do not reference any sentencing enhancement. Instead, the recidivist provision is set forth separately in [Section] 9718.2. As in **Aponte**[,] this structure confirms that the enhancement is a

sentencing factor—not a substantive element of the offense—and therefore does not need to be pled in the information. The statutory framework governs here, not the historical pleading requirements cited by [A]ppellant, and the Commonwealth complied with Section 9718.2(c) by providing notice after conviction and before sentencing.

Commonwealth Brief at 27.

As previously noted, the trial court imposed Appellant's prison terms pursuant to Section 9718.2, which provides, in relevant part, as follows:

**(a) Mandatory sentence.--**

(1) Any person who is convicted in any court of this Commonwealth of an offense set forth in section 9799.14 (relating to sexual offenses and tier system) shall, if at the time of the commission of the current offense the person had previously been convicted of an offense set forth in section 9799.14 or an equivalent crime under the laws of this Commonwealth in effect at the time of the commission of that offense or an equivalent crime in another jurisdiction, be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary. ....

* * *

**(b) Mandatory maximum.--**An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S.[A.] § 1103 (relating to sentence of imprisonment for felony) or any other provision of this title or other statute to the contrary.

**(c) Proof of sentencing.--The provisions of this section shall not be an element of the crime**, **and notice thereof to the defendant shall not be required prior to conviction**, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. The applicability of this section shall be determined at sentencing. The sentencing court, prior to imposing sentence on an offender under subsection (a), shall have a complete record of

the previous convictions of the offender, copies of which shall be furnished to the offender. If the offender or the attorney for the Commonwealth contests the accuracy of the record, the court shall schedule a hearing and direct the offender and the attorney for the Commonwealth to submit evidence regarding the previous convictions of the offender. The court shall then determine, by a preponderance of the evidence, the previous convictions of the offender and, if this section is applicable, shall impose sentence in accordance with this section….

42 Pa.C.S.A. § 9718.2 (emphasis added); *see also id.* § 9799.14(d) (listing rape and IDSI as Tier III sexual offenses).

In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the United States Supreme Court reiterated that

under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (**other than prior conviction**) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt.

*Apprendi*, 530 U.S. at 476 (citation omitted; emphasis added). Significantly, the *Apprendi* Court concluded that the 14th Amendment requires state statutes to honor this same guarantee. *Id.*; *see also id.* at 490 ("**Other than the fact of a prior conviction**, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (emphasis added)).

In *Alleyne v. United States*, 570 U.S. 99 (2013), the United States Supreme Court concluded that "there is no basis in principle or logic to distinguish facts that raise the maximum from those that increase the minimum[.]" *Id.* at 116; *see also id.* at 111 n.1 ("In *Almendarez-Torres*

*v. United States*, 523 U.S. 224 (1998), we recognized a narrow exception to [the general rule, that facts that increase prescribed penalties are elements of a crime,] for the fact of a prior conviction."); ***Commonwealth v. Hale***, 85 A.3d 570, 585 n.13 (Pa. Super. 2014) ("Prior convictions are the remaining exception to ***Apprendi*** and ***Alleyne***, insofar as a factfinder is not required to determine disputed convictions beyond a reasonable doubt to comport with the Sixth Amendment jury trial right." (citations modified; citation omitted)).

In ***Aponte***, our Supreme Court rejected the defendant's argument that ***Apprendi***'s prior-conviction exception had been tacitly overruled. ***Aponte***, 855 A.2d at 809-10 (collecting cases). The ***Aponte*** Court concluded that,

> in cases **where the fact which increases the maximum penalty is <u>not</u> a prior conviction** and requires a subjective assessment, anything less than proof beyond a reasonable doubt before a jury violates due process. Additionally, any judicial finding which results in punishment beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. **Where, however, the judicial finding is the fact of a prior conviction, submission to a jury is unnecessary, since the prior conviction is an objective fact that initially was cloaked in all the constitutional safeguards, and is now a matter of public record**.

***Aponte***, 855 A.2d at 811 (citation and footnote omitted; emphasis added).

More recently, in ***Commonwealth v. Dejarnette***, 219 A.3d 163 (Pa. Super. 2019), we considered whether the criminal information must provide notice of the applicability of 18 Pa.C.S.A. § 6111(h) (providing for a five-year mandatory minimum sentence for certain crimes involving the sale or transfer of firearms), explaining as follows:

> [A]s the Commonwealth observes, "the purpose of a criminal information is to provide a defendant with timely notice of the facts and the charges against him and to provide him with the time and opportunity to prepare a defense." Commonwealth's Brief at 25 (citations omitted); *see **Commonwealth v. Bickerstaff**, 204 A.3d 988, 995 (Pa. Super. 2019) ("Informations must be read in a common sense manner and are not to be construed in an overly technical sense. The purpose of the information is to provide the accused with sufficient notice to prepare a defense, and to ensure that he will not be tried twice for the same act.") (citation omitted). In this case, **the fact invoking the application of section 6111(h)(1) — *i.e.*, Appellant's prior conviction for a crime under that section — was not an element that was required to be submitted to the fact-finder and proven beyond a reasonable doubt**. ***See Commonwealth v. Miller***, 102 A.3d 988, 995 n.5 (Pa. Super. 2014) (noting that the holding of ***Alleyne***, 570 U.S. at 106, that "facts that increase mandatory minimum sentences must be submitted to the jury" and found beyond a reasonable doubt does not apply to a prior conviction).

*Id.* at 166-67 (brackets omitted; emphasis added; some citations modified); *see also id.* at 167 (observing that, even if otherwise required, the Commonwealth could not have "alleged the applicability of section 6111(h)(1) in the criminal information, as that provision did not apply until [a]ppellant was [subsequently] convicted of the crimes charged in [the instant] case.").

Instantly, the cases upon which Appellant rely were all decided decades before ***Apprendi*** and ***Alleyne***. Pennsylvania precedent has since amply clarified that (1) prior convictions need not be presented to a jury for proof beyond a reasonable doubt; and (2) the Commonwealth is not required to include the fact of a prior predicate conviction, which supports the application of a mandatory sentence, in its charging document. ***Aponte***, 855 A.2d at 811; ***Dejarnette***, 219 A.3d at 166-67; *see also* 42 Pa.C.S.A. § 9718.2(c)

("The provisions of [Section 9718.2] shall not be an element of the crime[.]").
Appellant's second issue merits no relief.

In his final issue, Appellant challenges the discretionary aspects of his
sentence. Appellant's Brief at 18. Specifically, Appellant argues that the trial
court erred and abused its discretion by (1) failing to "properly consider
individualized criteria"; (2) "hand[ing] down a manifestly excessive and
unreasonable *de facto* life sentence"; and (3) relying on "impermissible
factors." ***Id.***[19]

Appellant argues that "the overall sentence is unduly harsh and
unsupported by adequate or proper justification on the record. It violates
both the Sentencing Code and underlying fundamental norms." ***Id.*** at 25
(citations omitted). According to Appellant, the trial court "imposed two

---

[19] Among his various assignments of trial court error, Appellant claims that
(1) "[t]he lower court did not order an updated [PSI prior to the second
sentencing hearing], but it nonetheless decided that [Appellant] can never be
reformed"; and (2) "[w]hen considering the prosecution's ten-year pretrial
plea offer, the court effectively penalized [Appellant] for invoking his right to
trial." Appellant's Brief at 21, 25. These two statements, unsupported by
legal authority or explication, represent the entirety of Appellant's arguments
on these matters. Accordingly, these undeveloped claims are waived. ***See
Commonwealth v. Arias***, 286 A.3d 341, 349 (Pa. Super. 2022) ("[An
a]ppellant's failure to develop [] claims with argument, applicable authority,
and pertinent analysis results in the waiver of his claims." (citing
***Commonwealth v. Antidormi***, 84 A.2d 736, 754 (Pa. Super. 2014) ("[A]s
Appellant has cited no legal authorities nor developed any meaningful
analysis, we find this issue waived for lack of development." (citation
omitted)); ***see also*** Pa.R.A.P. 2119(a) (requiring the argument section of
appellate briefs to include "such discussion and citation of authorities as are
deemed pertinent").

consecutive twenty-five to fifty-year confinement terms without sufficiently considering[,] on the record[, Appellant's] characteristics or personal history." *Id.* at 19 (record citation omitted).

Regarding his claim that the trial court relied on impermissible sentencing factors, Appellant complains that the trial court purportedly relied on K.S.'s VIS, introduced at the first sentencing hearing, and "impermissibly considered [Appellant's] past charges that did not result in conviction[.]" *Id.* at 20-21[20] (citing *Commonwealth v. Berry*, 323 A.3d 641, 656 (Pa. 2024), for the proposition that the "consideration of bare arrests requires a new sentencing hearing, even where the court supplies other legitimate rationale[s]"). Appellant emphasizes the *Berry* Court's observation that "[a]s a general matter, evidence of a defendant's arrest record is inadmissible and irrelevant in nearly every criminal law context." *Berry*, 323 A.3d at 648; *see also* Appellant's Brief at 22 (citing *Commonwealth v. Smithton*, 631 A.2d 1053, 1054 (Pa. Super. 1993), which held that "a trial court's consideration during sentencing of the testimony of alleged victims of crimes for which the defendant was acquitted constitutes reversible error.").

---

[20] The only record citation Appellant supplies, in support of his argument, directs us to the trial court's response to Appellant's objection. *See* Appellant's Brief at 22 ("the fact that some [of the charges] were *nolle prosequi* because [Appellant] was found guilty on one[,] doesn't mean those facts didn't exist." (quoting N.T., 2/1/24, at 7-8)).

Appellant additionally argues that the trial court's sentence "is the product of partiality, bias, and/or ill will[,]" allegedly evidenced by the fact that the trial court "repeatedly and incorrectly branded [Appellant] a 'predator' based on opinion – despite a contrary report[, *i.e.*, the SOAB assessment]." *Id.* at 21 (citations omitted).

The Commonwealth disputes Appellant's claim that the trial court's sentence violates the fundamental norms underlying the Sentencing Code, noting that, at the second sentencing hearing,

> the [trial] court acknowledged the statutory sentencing factors and explicitly weighed Appellant's rehabilitative prospects against the need to protect the public. *See* N.T., 2/1/24, at 15 ("… Rehabilitation is one factor. Protection [of] society is another factor that's very, very, very important."); *see also* Trial Court Opinion, 5/24/22, at 15-16 (finding that Appellant's "sexual proclivity for rape makes him unamenable for rehabilitation."). The [trial] court recounted some of its observations from trial, as well as Appellant's prior sexual assaults. *Id.* at 14-15. The [trial] court concluded that, given this history and the present offense, Appellant "is a sexual predator" who poses a continuing danger to society, and that consecutive mandatory minimum terms were warranted. *See*, *e.g.*, *id.* at 15. Contrary to Appellant's suggestion, the [trial] court did not rely exclusively on his record. The [trial] court was aided in its consideration by defense counsel's thorough presentation, which included Appellant's employment and military history, as well as Appellant's allocution, which included a showing of remorse, but found those mitigating factors insufficient to outweigh the seriousness of the offense and the need for public protection. *Id.* at 9-14.

Commonwealth Brief at 11-12 (capitalization and some citations modified).

Contrary to Appellant, the Commonwealth maintains that, if the trial court considered K.S.'s VIS in formulating its sentence,[21] such consideration was permissible. *Id.* at 14. The Commonwealth argues that, while "[i]t is impermissible for a court to consider factors already included within the sentencing guidelines as the *sole* reason for increasing or decreasing a sentence to the aggravated or mitigated range," the trial court may consider a defendant's prior criminal history where it is "*used to supplement other extraneous sentencing information*." **Id.** (quoting **Commonwealth v. Shugars**, 895 A.2d 1270, 1275 (Pa. Super. 2006) (emphasis in **Shugars**; citation omitted)).

The Commonwealth further disputes Appellant's claim that the trial court impermissibly relied on Appellant's arrests not resulting in convictions. Commonwealth Brief at 15. According to the Commonwealth, the trial court's

> reference to [Appellant's 1988] charges at [the second sentencing hearing] was measured and appropriately contextualized. When read in context, the [trial] court's comment was not an endorsement of unproven allegations, but rather a recognition that the dismissed or withdrawn charges—pursuant to [A]ppellant's prior plea agreement—stemmed from the same underlying conduct that gave rise to the convictions under [A]ppellant's prior plea agreement.

---

[21] Appellant complains that the trial court "did not repudiate its acceptance of" K.S.'s VIS at the second sentencing hearing. Appellant's Brief at 20. We note, however, that the trial court's on-the-record comments also make no reference to K.S.'s VIS.

*Id.* at 15-16. The Commonwealth argues that **Berry** is inapposite, because, "[h]ere, … the [trial] court did not rely on mere arrests or unproven allegations[,] but properly considered the conduct underlying [A]ppellant's prior convictions." *Id.* at 16-17.

Initially, we observe that there is no automatic right of appeal from the discretionary aspects of a sentence. **Commonwealth v. Mastromarino**, 2 A.3d 581, 585 (Pa. Super. 2010). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> We conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Glawinski**, 310 A.3d at 325.

Instantly, Appellant timely filed a notice of appeal from his judgment of sentence, and preserved his claim in post-sentence motions following his first and second sentencing hearings.[22] Appellant additionally included in his

---

[22] We have observed that "[w]hen a sentence is vacated and the case is remanded to the sentencing court for resentencing, the sentencing judge should start afresh." **Commonwealth v. Serrano**, 150 A.3d 470, 473 (Pa. Super. 2016) (quoting **Commonwealth v. Jones**, 640 A.2d 914, 919 (Pa. Super. 1994)). "A judge who wishes to rely upon sentencing considerations expressed at an earlier sentencing hearing should specifically state for the
*(Footnote Continued Next Page)*

appellate brief a Pa.R.A.P. 2119(f) statement of reasons relied upon for allowance of appeal (Rule 2119(f) concise statement).

In his second post-sentence motion, Appellant alleged the trial court imposed a "manifestly excessive" "*de facto* life sentence[.]" Second Post-Sentence Motion, 2/2/24, ¶¶ 2, 3. Appellant further claimed that "the trial court failed to state sufficiently adequate reasons for imposing the sentence and failed to give individualized consideration to [A]ppellant's background, personal history and rehabilitative needs, focusing solely on punishment and

_____

record that he is incorporating those considerations by reference." ***Commonwealth v. Thomas***, 537 A.2d 9, 14 (Pa. Super. 1988).

At the second sentencing hearing, the Commonwealth moved "to incorporate in[to] the record the previous sentencing hearing." N.T., 2/1/24, at 7. While the trial court did not explicitly rule on the Commonwealth's motion, it is apparent that the trial court relied, at least in part, on considerations it articulated at the time of Appellant's first sentencing hearing. ***See*** Trial Court Opinion, 10/4/24, at 9, 11 (regarding the discretionary aspects of its sentence, the trial court citing, as Appendix B, its May 24, 2022, Pa.R.A.P. 1925(a) opinion, filed in connection with Appellant's direct appeal from his October 27, 2021, judgment of sentence).

This procedural defect notwithstanding, Appellant has not alleged that the trial court erred by considering evidence presented at the time of the first sentencing hearing. Indeed, Appellant, himself, cites to the transcript from the first sentencing hearing in support of several of his sentencing arguments. ***See***, ***e.g.***, Appellant's Brief at 16 (the trial court referring to Appellant as a "predator"), 20 (the trial court "relied upon … a [VIS] from a 1988 case"), 25 ("The [trial] court recognizes that it imposed a life sentence"; Appellant arguing the trial court punished Appellant for proceeding to trial when it noted "the prosecution's ten-year pretrial plea offer"). Accordingly, where they are relevant, we consider the first sentencing hearing transcript and the trial court's May 24, 2022, Pa.R.A.P. 1925(a) opinion in our review of Appellant's third issue.

retribution." ***Id.*** ¶ 3; ***see also id.*** ¶ 4 ("The [trial c]ourt focused solely on [Appellant's] criminal history and the facts of the instant case. As such the sentence was not individualized.").

Appellant's second post-sentence motion failed to challenge the trial court's purported reliance on impermissible sentencing factors. ***But see*** First Post-Sentence Motion, 11/5/21, ¶ 3 (generally averring that the trial court "relied on impermissible factors in violation of the sentencing guidelines and fundamental norms of sentencing"). Appellant did, however, lodge contemporaneous objections to the introduction of K.S.'s VIS at the first sentencing hearing, and the Commonwealth's recitation of the facts underlying Appellant's 1988 charges at the second sentencing hearing. ***See*** N.T., 10/27/21, at 10 (Appellant objecting to the relevance of K.S.'s VIS, as it was "based on the events that occurred in 198[8]."); N.T., 2/1/24, at 8 (Appellant objecting to the Commonwealth's account of Appellant's 1988 charges, because Appellant did not plead guilty to all of the allegations the Commonwealth outlined). Additionally, although he did not lodge an objection, Appellant responded to the trial court's characterization of Appellant as a "sexual predator" by pointing out that the SOAB assessment did not deem Appellant to be an SVP. N.T., 2/1/24, at 16. Under these circumstances, we conclude Appellant preserved his discretionary sentencing challenge. Accordingly, we consider whether Appellant's claims present a substantial question.

In his Rule 2119(f) concise statement, Appellant contends that the trial court imposed an "unduly harsh sentence," and

> abused its discretion when it imprisoned [Appellant] for up to 100 years. The [trial] court wrongly concluded (based on personal opinion and without sufficient competent evidence) that [Appellant] is a "predator" incapable of rehabilitation. [The trial court] focused largely on [Appellant's] criminal record and the nature of the current charges to the exclusion of other relevant criteria. [The trial court] initially considered an improper impact statement from an unrelated 1988 case, … and erroneously took non-conviction records into account.

Appellant's Brief at 16-17 (citations omitted).

We have observed that "[t]he imposition of consecutive, rather than concurrent, sentences may raise a substantial question in only the most extreme circumstances." *Commonwealth v. Aulisio*, 253 A.3d 338, 344 (Pa. Super. 2021) (citation omitted). However, we have concluded that a defendant raised a substantial question where he averred "that the imposition of consecutive sentences violated the express provisions of the Sentencing Code and that the aggregate sentence of sixty years' incarceration [was] contrary to the fundamental norms which underlie the sentencing process." *Id.* (citation omitted); *see also Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) ("This Court has [] held that an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." (citations omitted)); *Smithton*, 631 A.2d at 1055 (concluding the appellant raised a substantial question where he asserted the trial court relied on an impermissible

sentencing factor, *i.e.*, victim impact testimony from alleged victims for crimes of which the appellant was acquitted).

Based upon the foregoing, we conclude that Appellant's challenge to the imposition of consecutive sentences as unduly excessive, combined with his claim that the trial court failed to consider adequate/permissible sentencing factors, raises a substantial question. ***See Aulisio***, 253 A.3d at 344; ***Swope***, 123 A.3d at 340; ***Smithton***, 631 A.2d at 1055; ***see also*** Commonwealth Brief at 9 n.5 (conceding that Appellant raises a substantial question).

Our Supreme Court

has stated that the proper standard of review when considering whether to affirm the sentencing court's determination is an abuse of discretion. An abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, our Court recently offered: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants[,] and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function to be performed by the sentencing court.

***Commonwealth v. Harvard***, 64 A.3d 690, 701-02 (Pa. Super. 2013) (brackets omitted) (quoting ***Commonwealth v. Walls***, 926 A.2d 957, 961-62 (Pa. 2007)); ***see also id.*** (employing the above standard in determining whether the trial court abused its discretion by, *inter alia*, imposing consecutive 25-year prison terms, for separate robbery convictions, "representing the mandatory minimum[s] applicable to a third strike offender[, ***see*** 42 Pa.C.S.A. § 9714 (sentences for second and subsequent offenses)]."); ***Commonwealth v. Rominger***, 199 A.3d 964, 970 (Pa. Super. 2018) ("The trial court has discretion within legal limits when sentencing a defendant, and absent an abuse of that discretion, we will not disturb its sentence.").

Sentencing Code Section 9721(b) directs trial courts to adhere to the general principle that the sentence imposed should call for total confinement consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b). "The weighing of factors under [Section] 9721(b) is exclusively for the sentencing court, and an appellate court may not substitute its own weight of those factors." ***Commonwealth v. Taylor***, 277 A.3d 577, 593 (Pa. Super. 2022) (quoting ***Commonwealth v. Bricker***, 41 A.3d 872, 876 (Pa. Super. 2012)). Further, "[i]n imposing a sentence, the trial judge may determine whether, given the facts of a particular case, a sentence should run consecutive to or concurrent

with another sentence being imposed." ***Commonwealth v. Perry***, 883 A.2d 599, 603 (Pa. Super. 2005) (citations omitted).

> We additionally recognize that
>
> [w]here pre-sentence reports exist, we shall presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A [PSI] constitutes the record and speaks for itself. Moreover, we state clearly that **sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure**. Having been fully informed by the presentence report, the sentencing court's discretion should not be disturbed. This is particularly true, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

***Commonwealth v. Faison***, 297 A.3d 810, 835-36 (Pa. Super. 2023) (ellipses and brackets omitted; emphasis added) (quoting ***Commonwealth v. Devers***, 546 A.2d 12, 18 (Pa. 1988)); ***see also Commonwealth v. Bartic***, 303 A.3d 124, 139 (Pa. Super. 2023) ("[A] trial court need not undertake a lengthy discourse for its reasons for imposing a sentence or specifically reference the statute in question, but the record as a whole must reflect the sentencing court's consideration of the facts of the crime and character of the offender" (quotation marks and citation omitted)); ***Commonwealth v. Ali***, 197 A.3d 742, 763 (Pa. Super. 2018) ("[T]he essential inquiry is whether the sentencing court was apprised of comprehensive information to make the

punishment fit not only the crime but also the person who committed it."

(citation and ellipsis omitted)).

Instantly, at the first sentencing hearing, the trial court set forth its

sentencing rationale as follows:

> I read everything, and [Appellant] did not wish to participate in
> [his PSI.   T]herefore, [Appellant's] version [of events] is
> unavailable.   ….   So I can only go with what information is
> provided.  Had [Appellant] provided some additional information,
> maybe … it might have swayed me.  ….  [R]egardless of what the
> SOAB [assessment] says, I don't live under a rock.  … I sat here,
> I listened to the testimony, and I take pretty darn good notes, and
> I looked at my notes the other day again.  And [Appellant] tried
> to rationalize, well, I would have driven away if I had known, if I
> saw, I would have done this, I would have done that.  You know
> what [Appellant] would have done?  If that minor showed up,
> [Appellant] would have taken advantage of that minor.  That's
> exactly what you would have done.  That did not escape me.
> You're a predator, notwithstanding what has been reported.  [O]n
> the last page of the [SOAB a]ssessment, … it says … you meet the
> criteria under the statute to be deemed predatory.  So although
> [the SOAB assessment] didn't find [that Appellant suffered from]
> a mental impairment, [it] did find you to be a predator.  And I
> agree.  You're a predator.

N.T., 10/27/21, at 19-20 (paragraph break omitted).

> The trial court thereafter imposed sentence, acknowledging that

> it's a life sentence.  And that life sentence is what you earned by
> your actions, and what is needed to protect society.  And [those
> are] the things I have to consider.  I don't deem you amenable to
> rehabilitation.  I do deem you to be a predator.  And in order to
> protect society, and protect the vulnerable, the sentence will
> effectively keep you in prison for life.

*Id.* at 22.

At the second sentencing hearing, before imposing sentence, the trial

court had the benefit of Appellant's sentencing memorandum, Appellant's

counsel's thorough argument (which outlined Appellant's age, education, military service, prior drug addiction, employment history, and Appellant's allegedly demonstrated amenability to rehabilitation based on his work history), Appellant's allocution, and the PSI. *See* N.T., 2/1/24, at 9-14. After weighing these considerations, the trial court determined that running Appellant's 25- to 50-year mandatory minimum terms consecutively was appropriate. *Id.* at 14-15, 17. In so concluding, the trial court highlighted Appellant's prior criminal convictions, the gravity of his instant offenses, Appellant's rehabilitative potential, and the protection of society. *See id.*

The trial court further directs us to its May 24, 2022, Pa.R.A.P. 1925(a) opinion (*see* Trial Court Opinion, 10/4/24, at 9, 11), wherein the trial court explained that

> Appellant's abhorrent actions throughout his life make him a predator. Appellant was given the opportunity to rehabilitate himself; he neglected to do so. Th[e trial c]ourt has a duty to consider the safety of the public[,] and the gravity of Appellant's actions throughout his lifetime demonstrate that he does not deserve life outside of incarceration. In addition, the consecutively imposed sentences represent wholly distinct conduct. **Appellant not only engaged in a six-day sexual conversation with** [**someone he believed to be**] **a child, but** [**Appellant**] **also went to meet with her to actually engage in** [**sexual conduct**].

Trial Court Opinion, 5/24/22, at 16 (emphasis added).

Upon review, we conclude the record evidences the trial court's individualized approach to Appellant's sentencing. The trial court considered Appellant's prior criminal history, rehabilitative potential, the gravity of the

offenses, and the protection of the public. 42 Pa.C.S.A. § 9721(b). As noted above, in addition to having the benefit of a PSI, the trial court's judgment was informed by the evidence Appellant presented in his argument, allocution, and sentencing memorandum. **See Faison**, 297 A.3d at 835 ("Where pre-sentence reports exist, we shall presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." (citation and ellipsis omitted)).

In requesting that we overturn his consecutive sentences, Appellant essentially asks that we reweigh the sentencing factors set forth in Section 9721(b), and substitute our own judgment for that of the trial court. This we cannot do. **See Taylor**, 277 A.3d at 593; **see also Commonwealth v. Austin**, 66 A.3d 798, 809 (Pa. Super. 2013) (finding no abuse of the trial court's discretion in imposing an aggregate 35- to 70-year sentence, which consisted of numerous consecutively-imposed sentences for Appellant's child pornography convictions; noting that, on appeal, the appellant was seeking a "volume discount" for distinct crimes); **Commonwealth v. Shank**, 883 A.2d 658, 671 (Pa. Super. 2005) ("[W]e conclude that a confluence of facts, some of which are common to a defendant's multiple offenses, does not preclude a finding of multiple criminal episodes, and may compel imposition of distinct sentences for multiple related counts.").

Appellant's claim that the trial court relied on impermissible sentencing factors is also without merit. The trial court's description of Appellant as a "sexual predator" is supported by the record. *See* SOAB Assessment, 10/8/21, at 7-8 (deeming Appellant's conduct "predatory"); 42 Pa.C.S.A. § 9799.12 (defining "predatory" as "[a]n act directed at a stranger or at a person with whom a relationship has been initiated, established, maintained or promoted, in whole or in part, in order to facilitate or support victimization.").

Moreover, our review discloses that the trial court made no reference to K.S.'s VIS at either the first or second sentencing hearing. Appellant's claim that, at the second sentencing hearing, the trial court did not "repudiate its acceptance" of K.S.'s VIS, Appellant's Brief at 20, is not evidence that the trial court impermissibly relied on K.S.'s VIS. *See Commonwealth v. Smithton*, 631 A.2d 1053, 1057 (Pa. Super. 1993) ("[A] sentence must be vacated only where it reasonably appears from the record that the trial court *relied* in whole or in part upon such an impermissible factor." (quotation marks, brackets, and citations omitted; emphasis in original)).

We further agree with the Commonwealth that the trial court's consideration of criminal acts, charged alongside the offenses to which Appellant ultimately pled guilty in 1989, "was not an endorsement of unproven allegations, but rather a recognition that the … withdrawn charges … stemmed from the same underlying conduct that gave rise to the convictions under

[A]ppellant's prior plea agreement." Commonwealth Brief at 16; **see also Smithton**, 631 A.2d at 1057 (observing that "[a] court is ordinarily presumed to be capable of identifying and properly disregarding all but the most prejudicial and inflammatory evidence" (quotation marks and citations omitted)). **But see Berry**, 323 A.3d at 655-56 (noting that "[w]here a sentencing court has considered prior arrests that did not result in convictions, the appropriate remedy [] is a remand for resentencing without such consideration"; concluding that the sentencing court erred by imposing a sentence deviating upward from the applicable sentencing guidelines, based, in part, on the appellant's prior arrest record, despite the appellant having a prior record score of zero); **Commonwealth v. Stewart**, 867 A.2d 589, 593-94 (Pa. Super. 2005) (remanding for a new sentencing hearing based on the sentencing court's consideration of an impermissible sentencing factor, where the sentencing court stated, "This sentence is in the aggravated range because two counts of IDSI, which each carr[y] a mandatory minimum of five years, have been *nolle prossed*[,] as well as another count of statutory sexual assault." (emphasis and brackets omitted)).

Based upon the foregoing, Appellant's final issue entitles him to no relief.

Judgment of sentence affirmed.

President Judge Emeritus Panella, Judge Olson, Judge Kunselman, Judge King,

Judge Sullivan, and Judge Lane join the opinion.

President Judge Lazarus and Judge Stabile concur in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/14/2026