J-S41035-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
  :
v.   :
  :
  :
  :
LEROY D. SIMMONS   :
  :
Appellant   :   No. 268 EDA 2024

Appeal from the PCRA Order Entered December 19, 2023
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0000910-2021

BEFORE: MURRAY, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:          **FILED FEBRUARY 9, 2026**

Leroy D. Simmons ("Simmons") appeals *pro se* from the order dismissing his timely first petition seeking relief pursuant to the Post Conviction Relief Act ("PCRA").[1] Simmons, who entered a negotiated guilty plea to person not to possess a firearm and possession of a controlled substance, asserts the ineffective assistance of plea counsel concerning the suppression of evidence, his awareness of the elements of the offenses, and the Commonwealth's late disclosure of evidence. Because Simmons has not shown an error requiring relief from the dismissal of these claims, we affirm.

The facts and procedural history of this appeal are as follows. In February 2021, police officers executed a search warrant at a residence ("the residence") in Chester City. ***See*** Criminal Complaint, Affidavit of Probable Cause, 2/19/21, at 1; ***see also*** N.T., 11/3/21, at 10-11 (incorporating the

_____

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

criminal complaint and affidavit of probable cause as the factual basis of Simmons's guilty plea). After Simmons answered the door, the officers entered peaceably and found several other people in the home at that time. **See** Criminal Complaint, Affidavit of Probable Cause, 2/19/21, at 1. During the search, officers found a stolen pistol in a pair of Simmons's pants by a mattress, and, with Simmons's consent, officers searched his car and discovered heroin, cocaine, and marijuana. **See id**. The Commonwealth filed an information charging Simmons with person not to possess a firearm, receiving stolen property, possession of an instrument of crime, and three counts of possession of a controlled substance.

Brian Malloy, Esquire ("plea counsel") entered an appearance on behalf of Simmons and filed a motion to suppress asserting there was no probable cause for the search warrant. **See** Motion to Suppress, 5/24/21, at 1. At a suppression hearing, the Commonwealth moved into evidence the search warrant's affidavit of probable cause. Additionally, Detective Michael Honicker ("Detective Honicker") testified he prepared the affidavit of probable cause, and he summarized the affidavit's contents. **See** N.T., 6/29/21, at 7-13, 21, 25; **see also** Search Warrant, 2/9/21, at 2-9.

We summarize the contents of the search warrant's affidavit of probable cause as follows. Detective Honicker initially received a tip from a confidential informant ("the CI") who had previously provided information that resulted in arrests and convictions of other cases. The CI reported that an individual, then known as "Nook," was using the residence to store, prepare, and sell

- 2 -

cocaine. The CI stated that because "Nook" sold to preferred customers, the CI was personally unable to buy cocaine from "Nook" directly. The CI, however, had purchased cocaine from "Nook" using an "unwitting informant" ("UI") as an intermediary.[2] The detective had the CI arrange for the UI to purchase cocaine from "Nook" on four occasions, twice in January 2021, twice in February 2021. Each time, the detective searched the CI before the arranged purchase to ensure the CI did not have contraband and then gave the CI buy money. When the CI and UI drove and parked near the residence, the UI called "Nook," and "Nook" would arrange to meet the UI outside the residence, where police had set up surveillance. While the CI remained in the car, the UI and "Nook" met in front of the residence for several minutes, after which the UI returned to the car, and "Nook" returned to the residence. The CI and UI drove away without making any stops at other residences or meeting other people. The CI then returned to Detective Honicker with cocaine and without the buy money. The CI reported that he obtained the cocaine from the UI, which the UI had received from "Nook." Additionally, within twenty-four hours of the detective's application for the search warrant, the CI overheard a conversation that "Nook" recently obtained more cocaine.

_____

[2] At the suppression hearing, Detective Honicker testified a UI "is somebody that a CI uses that has no knowledge that he or she is working for the police, and they make the buy at the direction of the CI." N.T., 6/29/21, at 11. We further note neither the Commonwealth nor plea counsel asked Detective Honicker to identify Simmons as "Nook." Therefore, we refer to the individual referred in the search warrant's affidavit of probable cause as "Nook."

During cross-examination, plea counsel elicited Detective Honicker's testimony that: while the detective searched the CI before each of the four transactions, he could not search the UI because the UI was not involved in the police investigation; the CI and the UI drove to the residence before each purchase, but there was no audio or video recordings from inside the car; and neither the CI nor any other undercover officer directly purchased cocaine from "Nook." *See* N.T., 6/29/21, at 15-20. Additionally, plea counsel clarified that the CI was with a different UI when the CI overheard the conversation that "Nook" obtained more cocaine less than twenty-four hours before the detective applied for the search warrant. *See id*. at 22.[3] At the conclusion of the suppression hearing, plea counsel requested, and the trial court granted, leave to file a letter brief. *See id*. at 27. However, no letter brief appears in the record, and the trial court denied the suppression motion without referring to a brief being filed. *See* Order, 8/20/21, at 1.

On November 3, 2021, Simmons entered a negotiated guilty plea to person not to possess a firearm and one count of possession of a controlled substance.[4] At the beginning of the guilty plea hearing, plea counsel noted

---

[3] The detective added that he was not present for the conversation reported by the CI, but the detective noted that noted that "the more drugs [the detective] get[s] out of the target's house the more they [the CIs] get paid." *See* N.T., 6/29/21, at 23.

[4] The trial court dismissed the first-degree felony count of receiving stolen property with respect to the gun and two other counts of possession of a controlled substance pursuant to the plea agreement.

that Simmons had intended to start a jury trial that day but elected to plead guilty after receiving "newly-discovered evidence related to prison phone calls." N.T., 11/3/21, at 3.[5] Following an in-court colloquy, which included confirmation that Simmons had initialed and signed a written plea colloquy, the trial court accepted Simmons's guilty plea. Pursuant to the plea agreement, the trial court sentenced Simmons to five to ten years of imprisonment and a concurrent one year of probation.[6] Simmons did not file a post-sentence motion or a direct appeal.

Simmons timely filed a *pro se* PCRA petition, and the court appointed counsel ("PCRA counsel"). PCRA counsel filed a petition to withdraw and a no-merit letter. *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988) (*en banc*). The court granted PCRA counsel's petition to withdraw and issued a notice of intent to dismiss Simmons's petition. *See* Pa.R.Crim.P. 907(1). Simmons filed a *pro se* response, and the PCRA court thereafter dismissed Simmons's petition.

---

[5] Simmons asserts this call was a recorded prison phone call with his baby's mother. *See* Simmons's Brief at 23-24. The record, however, does not contain a recording or transcript of the phone call or phone calls.

[6] This Court stayed this appeal pending *en banc* decisions in *Commonwealth v. Robinson*, No. 907 EDA 2024, and *Commonwealth v. Jennings*, 1128 EDA 2024, to consider whether the imposition of a sentence of probation concurrent to a sentence of incarceration constituted an illegal sentence. *See* Order, 268 EDA 2024, 8/26/25, at 1 (hereinafter, "stay order"). This Court has filed a published opinion in *Jennings* and holds that a trial court may so do. *See Commonwealth v. Jennings*, --- A.3d ---, ---, 2026 PA Super 8, at 2 (Pa. Super. Jan. 14, 2026). Therefore, we vacate the stay order.

Simmons timely appealed and filed a *pro se* Pa.R.A.P. 1925(b) statement. Pursuant to a remand by this Court, the PCRA court filed a supplemental Rule 1925(a) opinion addressing the claims raised in Simmons's *pro se* Rule 1925(b) statement, and Simmons filed a supplemental brief.[7]

Simmons raises the following issues for our review:

1) Did the PCRA [c]ourt abuse it[s] discretion in finding there was no merit when . . . plea counsel failed to develop the argument for the suppression of evidence based on the lack of probable cause?

2) Did the PCRA [c]ourt abuse it[s] discretion in finding there was no merit when trial/plea counsel failed to litigate a motion to dismiss/quash the charges after the Commonwealth failed to prove a prima facie case that [Simmons] possessed or control[]ed either the firearm or drugs with which he was charged?

3) Did the PCRA [c]ourt abuse it[s] discretion in finding there was no merit when trial/plea counsel failed to request a continuance to investigate the late disclosure of evidence on the eve of jury selection and trial?

Simmons's Brief at 4. Although not expressly stated in his statement of questions, Simmons also asserts that plea counsel's performance was deficient because neither plea counsel nor the trial court explained the

_____

[7] Our prior remand order noted that the PCRA court appointed new appellate counsel after granting PCRA counsel's petition for leave to withdraw pursuant **Turner** and **Finley**. However, because Simmons had filed a *pro se* Rule 1925(b) statement, we directed the PCRA court strike appellate counsel's appointment and docket and address Simmons's *pro se* Rule 1925(b) statement. The PCRA court complied with our remand order and issued a supplemental Rule 1925(a) opinion. This Court granted leave to the parties to file supplemental briefs. While Simmons filed a supplemental brief in response to the PCRA court's supplemental Rule 1925(a) opinion, the Commonwealth, whose initial brief did not address the merits of this appeal, has not filed a supplemental brief.

element of possession on the record, *see id*. at 17; Simmons's Supplemental Brief at 4, and plea counsel should have sought to suppress the prison phone call because his baby's mother, to whom he was talking, was acting as a government agent. *See* Simmons's Brief at 34; Simmons's Supplemental Brief at 9.[8]

Our standard of review for an order denying PCRA relief is "whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Parker*, 249 A.3d 590, 594 (Pa. Super. 2021) (internal citation omitted). "Moreover, we must conduct our review in the light most favorable to the prevailing party, in this instance, the Commonwealth." *Commonwealth v. Rizor*, 304 A.3d 1034, 1058 (Pa. 2023) (internal citation omitted). The PCRA petitioner "has the burden to persuade this Court that the PCRA court erred and that such error requires relief." *Commonwealth v. Wholaver*, 177 A.3d 136, 144–45 (Pa. 2018) (internal citations omitted). Further, "it is well settled that this Court may affirm a valid judgment or order for any reason appearing as of record." *Id*. at 145 (internal citation omitted).

---

[8] We note that Simmons repeatedly, but improperly, cites unpublished memoranda filed by this Court *before* May 1, 2019, as support for his claims. We will not consider those decisions as authority. *See* Pa.R.A.P. 126(b)(1) (permitting citations to unpublished memorandum decisions filed *after* May 1, 2019).

To prevail on a claim of ineffective assistance of counsel, a PCRA petitioner must demonstrate:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. . . . [B]ecause a PCRA petitioner must establish all . . . prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

*Commonwealth v. Kapellusch*, 323 A.3d 837, 847 (Pa. Super. 2024) (internal citation omitted).

In the context of ineffective assistance of counsel claims related to a guilty plea, this Court has distinguished claims related to counsel's litigation of pretrial issues and the advice to plead guilty. As this Court explained:

[W]here a defendant alleges that counsel ineffectively failed to pursue a [pretrial] motion, the inquiry is whether the failure to file the motion is itself objectively unreasonable, which requires a showing that the motion would be meritorious. . . . The prejudice inquiry still requires the defendant to establish that he would have filed the motion and proceeded to trial instead of accepting the plea, not simply that he would have filed the motion.

. . . [W]here the claim is that counsel ineffectively advised the defendant to accept a plea, the question is simply whether that advice itself is constitutionally sound. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. In other words, a defendant need not be apprised of every possible [pretrial] motion as a predicate to a finding that the plea was voluntary[, where such decisions are] left to counsel as a matter of strategy in the event a plea bargain is not reached.

*Commonwealth v. Johnson*, 179 A.3d 1153, 1160 (Pa. Super. 2018) (internal citations, quotation marks, and footnote omitted).

In his first issue, Simmons asserts plea counsel ineffectively litigated his motion to suppress. This issue requires him to demonstrate he had a meritorious suppression claim and would have proceeded to trial rather than entering a guilty plea. *See id*.

Our consideration of whether Simmons has identified a meritorious suppression claim is governed by the following principles:

> Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a totality of the circumstances test . . . . A magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The information offered to establish probable cause must be viewed in a common sense, nontechnical manner. Probable cause is based on a finding of the probability, not a *prima facie* showing of criminal activity, and deference is to be accorded a magistrate's finding of probable cause.

> Probable cause does not demand the certainty we associate with formal trials. Rather, a determination of probable cause requires only that the totality of the circumstances demonstrates a fair probability that contraband or evidence of a crime will be found in a particular place.

*Commonwealth v. Manuel*, 194 A.3d 1076, 1081 (Pa. Super. 2018) (*en banc*) (internal citations, quotation marks, and footnote omitted). The duty of a court reviewing a magisterial district judge's decision to issue a warrant

is to "ensure that the magistrate had a substantial basis for concluding that probable cause existed." ***See id***.

Our Supreme Court has cautioned that an examination and consideration of individual factors in a mechanical fashion effectively nullifies the mandate to assess the totality of the circumstances. ***Commonwealth v. Clark***, 28 A.3d 1284, 1289 (Pa. 2011). Moreover, a confidential informant's tip may establish probable cause "where police independently corroborate the tip, ***or*** where the informant has provided accurate information of criminal activity in the past, ***or*** where the informant himself participated in the criminal activity." ***Id***. at 1288 (internal citation omitted).

Simmons argues that plea counsel's litigation of his motion to suppress was deficient because plea counsel failed to investigate the CI's history of reliability and challenge the CI's record of arrests. ***See*** Simmons's Brief at 10-11. Simmons also asserts plea counsel should have highlighted deficiencies in the search warrant's affidavit of probable cause and presented more developed factual and legal arguments to the trial court. Specifically, Simmons contends that he would have prevailed on his motion to suppress had plea counsel argued that: (1) the search warrant's affidavit of probable cause contained no statements about the UI and "Nook" exchanging money or drugs during any of the four arranged transaction, despite the fact they occurred outside in front of the residence; (2) it was equally likely the UI sold the cocaine to the CI directly without "Nook's" involvement; and (3) there had been no direct controlled purchases between "Nook" and the CI or another

undercover officer. *See id*. at 10-15; Simmons's Supplemental Brief at 5-6. Simmons emphasizes that plea counsel had requested leave file a post-hearing brief but did not file a brief. *See* Simmons's Supplemental Brief at 6. Simmons concludes he would not have pleaded guilty had plea counsel successfully litigated his motion to suppress and excluded the principal evidence against him at a trial.

The PCRA court rejected Simmons's issue and concluded there was a substantial basis in the affidavit of probable cause for the search warrant to issue. *See* PCRA Court Supplemental Opinion, 1/13/25, at 7. The court noted its suppression findings and conclusions of law that the police had set up four controlled buys based on the CI's tips, the CI had proved reliable based on eighteen convictions, and Detective Honicker observed activity consistent with drug sales. *See id*. The court further determined that Simmons did not show how further development of his suppression arguments would have resulted in a favorable suppression ruling. *Id*.

We agree with the PCRA court that the search warrant's affidavit of probable cause stated a fair probability connecting the residence to illegal drug activity. The affidavit recited that the CI had "provided information the past . . . that led to the arrest of at least twelve (20) [sic] individuals for [drug offenses] with at least twelve (18) [sic] cases resulting in [drug] convictions

. . .." Search Warrant, 2/9/21, at 3.[9] The affidavit stated that "Nook" sold to preferred customers or persons that he knew well, and the CI previously purchased cocaine from "Nook" using the UI because the CI could not purchase directly from "Nook." *See id*. at 4.

As described in the affidavit of probable cause, the **four** transactions arranged by Detective Honicker, followed a similar pattern, and we use the following account as an example:

> Detective Honicker met with [the CI] and after searching [the CI] and finding [the CI] to be free of drugs and money, gave [the CI] a quantity of currency it order to make a cocaine purchase from ["Nook"] . . .. [The CI] proceeded to the area of [the residence] and parked in the 500 block of East 10th Street in the immediate vicinity of [the residence] but not in front of the entranceway of [the residence]. [The UI] made a phone call to ["Nook"] in the presence of [the CI] and was told to come directly to the residence . . . in order to avoid undo [sic] attention by his neighbors and the Narcotics Police. This information was related to surveillance Detectives and did [sic] observe ["Nook"] come to the front door of the [residence] fitting the general description given by [CI] of ["Nook"]. [The UI] exited his/his [sic] vehicle leaving [the CI] inside the vehicle and walked to meet ["Nook"]. [The UI] met with ["Nook"] and both [the UI] and ["Nook"] stayed on the sidewalk directly outside [the residence] where ["Nook"] came out of the front door of th[e] residence] and only met and stayed for a short time, several minutes. [The UI] exited the front of the house and proceeded to walk back to his/his [sic] vehicle while ["Nook"] went back inside of the residence. [The CI and the UI]

---

[9] Simmons does not challenge the inconsistencies between the uses of the terms "twelve" and the parenthetical references to twenty individuals being arrested and eighteen convictions. Nevertheless, these inconsistencies are immaterial in this case because there is no fixed point at a CI's track record renders the CI reliable or unreliable, *cf*. *Manuel*, 194 A.3d at 1084, and a proper review of a challenge to probable cause focuses on the totality of the circumstances stated in the affidavit of probable cause, *see Clark*, 28 A.3d at 1289.

were always under constant police surveillance. [The UI and the CI] drove from the area without meeting any other individuals or stopping at any other residences along the route. [The CI] immediately met with Detective Honicker and handed Detective Honicker a clear plastic bag containing a white powdery substance which Detective Honicker field tested positive for the presence of cocaine. [The CI] was once again searched and found to be free of money and drugs. [The CI] stated he/she had purchased the cocaine via [the UI] from ["Nook"].

*Id*. at 7-8.

Based on the foregoing, we agree with the PCRA court that there was a substantial basis for the search warrant to issue. Detective Honicker provided a basis to conclude the CI had provided accurate information of criminal activity in the past and was reliable. *See Clark*, 28 A.3d at 1288. After each of the four transactions, the CI reported obtaining cocaine from the UI, which the UI received from "Nook." There was additional independent corroboration linking the residence to drug activity based on Detective Honicker's observations that after the CI and the UI drove to the residence, the UI met with "Nook" outside of the residence, and "Nook" returned to the residence after the meeting. *See Clark*, 28 A.3d at 1291 (holding that observations of the defendant leaving his residence before a controlled buy and then returning to the residence established probable cause to conclude the residence was connected to the illegal transaction). Thus, the totality of the circumstances stated in the search warrant's affidavit of probable cause established a fair probability that contraband could be found in the residence. *Cf. Clark*, 28 A.3d at 1288.

To the extent Simmons believes plea counsel should have challenged the CI's record of providing accurate information leading to arrests, he relies on his own bald assertion that Detective Honicker must have been exaggerating. Simmons's speculation cannot sustain his claim that plea counsel was ineffective for failing to investigate, present additional evidence, or otherwise impeach Detective Honicker. **See Commonwealth v. Paddy**, 15 A.3d 431, 445 (Pa. 2011) (noting that allegations of ineffective assistance of counsel based on speculation are meritless). Moreover, while Simmons raises piecemeal attacks to the adequacy of the independent observations by Detective Honicker, probable cause requires a consideration of the totality of the circumstances and a demonstration of a fair probability that criminal activity occurred and that contraband could have been found at the residence, not a *prima facie* showing of criminal activity. **See Clark**, 28 A.3d at 1289, 1291 (noting that the totality of circumstances "permits a balanced assessment of the relative weight of all the various indicia of reliability or unreliability of an informant's tip"); **see also Commonwealth v. Rapak**, 138 A.3d 666, 672 (Pa. Super. 2016) (noting that "the police need not rule out all other possibilities in establishing probable cause for the issuance of a search warrant") (internal citation omitted). Here, as discussed above, the affidavit of probable cause included a record of arrests and conviction to find the CI reliable, independent corroboration by Detective Honicker, and information from the CI based on personal observations when engaging the UI on four occasions to mediate purchases of cocaine from "Nook." Applying the totality

of the circumstances test, we conclude Simmons has not established a meritorious suppression claim. Therefore, Simmons has not demonstrated error in the PCRA court's dismissal of Simmons's first issue challenging plea counsel's ineffective assistance of counsel when litigating the motion to suppress. **Cf**. **Johnson**, 179 A.3d at 1160.

Simmons's second issue raises ineffective assistance of counsel claims focused on his alleged misunderstanding of possession as an element of person not to possess a firearm and possession of a controlled substance. **See** Simmons's Brief at 16-22. Simmons contends plea counsel was ineffective for not explaining to him the nuances of constructive possession or ensuring the trial court explained the element of possession to him. **See id**. at 19; Simmons's Supplemental Brief at 4. Simmons also claims that plea counsel should have filed a pretrial motion to dismiss the charges. **See** Simmons's Brief at 19-20.

Before addressing these contentions, we consider whether Simmons has properly preserved his issue for review. **See Commonwealth v. Wholaver**, 903 A.2d 1178, 1184 (Pa. 2006) (holding appellate courts may *sua sponte* determine whether issues have been properly preserved on appeal). In his *pro se* Rule 1925(b) statement, Simmons alleged an error in the dismissal of his claim that plea counsel was ineffective "in failing to litigate a motion to dismiss/quash the charges after the Commonwealth failed to prove a *prima facie* case that [he] possessed or controlled either the firearm or drugs with which he was charged." Pa.R.A.P. Statement, 2/10/24, at ¶ 2 (italics added).

Because Simmons's Rule 1925(b) statement only raised an issue as to plea counsel's failure to file a pretrial motion to dismiss, his appellate issues related to plea counsel's failures to ensure there was an on-the-record explanation of the nature of constructive possession are waived. *See* Pa.R.A.P. 1925(b)(4)(ii), (vii); *Commonwealth v. Arnold*, 284 A.3d 1262, 1278 (Pa. Super. 2022).[10]

_____

[10] Even if not waived, a review of the record would reveal no basis for affording Simmons relief because at the guilty plea hearing, Simmons stipulated to *the criminal complaint* and affidavit of probable cause which, in relevant part, stated that officers recovered "a stolen handgun . . . *in the pants of Simmons*" and heroin, cocaine and marijuana in "*his* Nissan Altima[,]" which he had given permission to search. Criminal Compl., Affidavit of Probable Cause, 2/19/21, at 1 (emphasis added); *see also* N.T., 11/3/22, at 10-11. Moreover, in the written plea colloquy, which Simmons signed and initialed, Simmons acknowledged that he understood, and plea counsel had explained to him, the elements of the crimes, the Commonwealth could prove that he committed each element of the crimes beyond a reasonable doubt, and he answered all questions truthfully. *See* Written Plea Colloquy, 11/2/21, at ¶¶ 23, 29. During the in-court colloquy, Simmons further verified that plea counsel had explained the elements of the offenses to him. *See* N.T., 11/3/22, at 11. The record also established that Simmons intended to proceed to trial the day he entered his guilty plea. *See id*. at 3. However, he elected to plead guilty because the prison phone call changed the defense's approach. *See id*. Thus, the totality of the circumstances surrounding Simmons's plea demonstrate Simmons was aware of the nature of the crimes, the nuances of possession, as well as possible defenses under a theory of constructive possession. *See Commonwealth v. Morrison*, 878 A.2d 102, 107, 109 (Pa. Super. 2005) (noting that the "failure to delineate the elements of the crimes at the oral colloquy, standing alone, will not invalidate an otherwise knowing and voluntary guilty plea," and a concluding that court may look to the totality of the circumstances to determine whether a defendant was aware of the nature of the crimes, even though the elements of the crime were not explained on the record). Moreover, he cannot demonstrate that plea counsel's ineffective assistance of counsel with respect to the nature of the offenses caused him to plead guilty.

To the extent Simmons challenges plea counsel's failure to file a pretrial motion to dismiss the charges, his appellate arguments are difficult to follow. He refers to the record developed at the suppression hearing and suggests there was no reference to a gun or drugs **in the search warrant's** affidavit of probable cause or in Detective Honicker's testimony at that hearing. **See** Simmons's Brief at 16-17. He also contends there was insufficient evidence to prove constructive possession. **See id**. at 18-19. Additionally, he claims the Commonwealth relied solely on hearsay evidence at a preliminary hearing, but his lead and supplemental briefs do not identify any inadmissible hearsay evidence presented at a preliminary hearing. **See id**. at 21; **see also** Simmons's Supplemental Brief at 8-9. Following our review, we conclude that this issue is also waived due to inadequate development. It is not the role of an appellate court to fashion a meaningful argument on behalf of an appellant. **See Commonwealth v. Armolt**, 294 A.3d 364, 377 (Pa. 2023).[11]

_____

[11] Moreover, under the circumstances of this case, we would discern no basis to conclude that plea counsel's failure to file a motion to dismiss resulted in prejudice, *i.e.*, the entry of an involuntary plea, even if Simmons had preserved this claim. Aside from Simmons's mistaken reliance on the search warrant's affidavit of probable cause instead of the criminal complaint's affidavit of probable cause, the record demonstrated Simmons changed his view on proceeding to trial based on the disclosure of additional evidence that would have been presented at trial, not on account of an alleged misunderstanding of the element of possession or plea counsel's failure to seek dismissal of the charges. **See** N.T., 11/3/22, at 3. While it is clear Simmons is now dissatisfied with his decision to plead guilty rather than proceed to trial, this alone does not provide a basis to find his plea involuntary or unknowing. **Cf**. **Commonwealth v. Felix**, 303 A.3d 816, 820 (Pa. Super. 2023) (noting that "[t]he law does not require that appellant be pleased with
*(Footnote Continued Next Page)*

In his final issue, Simmons asserts the PCRA court abused its discretion when dismissing his claims of plea counsel's ineffective assistance with respect to plea counsel's handling of the Commonwealth's disclosure of the prison phone call recording shortly before trial.

At the outset, we note Simmons's arguments rely heavily on the contents of the prison phone call, but Simmons has taken no steps to ensure that this Court has either a copy of the recording or a transcript of the prison phone call. The absence of such materials from the record prevents meaningful appellate review. *See Commonwealth v. Manley*, 985 A.2d 256, 263 (Pa. Super. 2009). Nevertheless, to the extent Simmons's issue relies on matters verifiable in the record, we may address those arguments.

Simmons argues that plea counsel was ineffective for not requesting a continuance after the Commonwealth disclosed the prison phone call to investigate possible challenges to the admission of the recording. Simmons asserts that plea counsel had no knowledge of where the recording came from, never investigated whether Simmons's baby's mother was working as an agent for the Commonwealth, and failed to inform him that he could seek a continuance or challenge the admission of the recording. Simmons's Brief at 24.[12] Plea counsel's lack of investigation, Simmons asserts, contributed to his

_____

the outcome of his decision to enter a plea of guilty"), *appeal denied*, 315 A.3d 834 (Pa. 2024).

[12] Simmons suspects that his baby's mother was acting under the instruction of police because of the alleged nature of the questions she asked him. *See* Simmons's Brief at 23-24. He adds that Detective Honicker testified at the suppression hearing that informants are paid. *See id*. at 26.

decision to plead guilty. *See id*. at 25. Simmons concludes that without a record showing the reasonableness of plea counsel's advice to plead guilty despite possible challenges to the admissibility of the prison phone call, the decision to deny relief on this claim cannot stand. *See id*. at 27.

The PCRA court determined this claim was devoid of merit because Simmons had an opportunity to review the prison phone call before entering his plea, said he had no further questions during the in-court plea colloquy, and thereafter entered his plea. *See* PCRA Court Supplemental Opinion, 1/13/25, at 9.

Following our review, we agree with the PCRA court that Simmons did not show plea counsel's advice was ineffective and caused him to plead guilty. Simmons must establish that plea counsel's advice to accept the plea offer was not within the range of competence demanded of attorneys in criminal cases. *See Johnson*, 179 A.3d at 1160. However, the mere fact that plea counsel did not discuss every possible basis to exclude the prison phone call does not prove Simmons's plea was involuntary. *See id*.

Here, the written plea colloquy establishes that Simmons was aware that he was waiving his right to file pretrial motions, including motions "to prevent the Commonwealth from presenting improperly obtained evidence at [his] trial." Written Plea Colloquy, 11/2/21, at ¶ 16. Simmons also acknowledged that he had enough time to fully discuss his case and his decision to plead guilty. *See id*. at ¶ 29. While Simmons now contends there are questions about the source and nature of the prison phone call, during the

in-court colloquy, he represented he had no further questions of counsel or the trial court about the recordings or his potential defense strategy. *See* N.T., 11/3/22, at 4-5; *see also Commonwealth v. Brown*, 48 A.3d 1275, 1277 (Pa. Super. 2012) (noting that "[a] defendant is bound by the statements made during the plea colloquy, and a defendant may not later offer reasons for withdrawing the plea that contradict statements made when he pled") (internal citation omitted).

Furthermore, the entire basis of Simmons's claim concerning the prison phone call is too speculative. Simmons essentially claims that if plea counsel had requested a continuance and investigated the prison phone call, plea counsel might have discovered Simmons's baby's mother was acting as a government agent, that is, that police had instructed her to elicit incriminatory responses. However, Simmons's bare assertions that the prison phone call might have been excluded if his baby's mother had been acting as a government agent does establish that his plea was unknowing or involuntary, or that plea counsel's advice to plead guilty fell below the range of competence demanded of attorneys in criminal cases. *Cf*. *Commonwealth v. Pursell*, 724 A.2d 293, 311 (Pa. 1999) (noting that "[c]laims of ineffective assistance of counsel that are based on speculation and conjecture do not adequately establish the degree of prejudice necessary" to afford PCRA relief). Accordingly, Simmons's third issue merits no relief.

Stay vacated. Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/9/2026